Jeff Frank **WHITE**, Petitioner,

v.

Carl **WHITE**, Respondent.

No. 83–0626–CV–W–9.

United States District Court,
W.D. Missouri, W.D.

Dec. 21, 1984.

Jeff Frank White, pro se.

George W. Cox, III, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

BARTLETT, District Judge.

Petitioner has filed *pro se* a habeas corpus petition under 28 U.S.C. § 2254 chal-

lenging his conviction on two counts of selling marijuana. Petitioner raises four issues as grounds for habeas corpus relief: 1) ineffective assistance of counsel; 2) violations of petitioner's due process rights; 3) double jeopardy resulting from amendment of petitioner's sentence; and 4) conviction despite insufficient evidence to rebut entrapment defense.

### Exhaustion

In response to the petition, respondent concedes that petitioner has exhausted available state post-conviction remedies on all issues except for petitioner's allegation that he was denied the right to file a motion for new trial. Petitioner admits that this issue has not been exhausted. Petitioner requests that the Court delete this issue and consider only the remaining exhausted issues. Therefore, the allegation that petitioner was denied the right to file a motion for a new trial will be severed and dismissed without prejudice.

### Ineffective Assistance of Counsel

Petitioner argued in state court and here that he was denied effective assistance of counsel because he was required by the trial court to go to trial with a lawyer. whom the petitioner did not want to represent him and who did not want to represent petitioner. Also, petitioner asserted that the Public Defender was overworked and, therefore, failed to exercise the customary skill and diligence that a competent attorney would perform under similar circumstances and, as a result, his defense was prejudiced.

After an evidentiary hearing, the trial court denied relief. On appeal the Missouri Court of Appeals rejected petitioner's ineffective assistance of counsel argument:

Defense counsel on this appeal with commendable zeal has made a vigorous attempt to show that the public defender was overworked and was consequently unable to and did not devote the necessary time and effort to the preparation and presentation of the defense in this case. Testimony with respect to this is-

sue was given by defendant, the public defender and the public defender's investigator. All of this testimony, together with the skillful argument made by defense counsel on this appeal, have been carefully considered, but we remain unpersuaded that the defendant has carried the burden of proving that the public defender failed to provide effective assistance of counsel within the prescription of *Seales v. State*, 580 S.W.2d 733 (Mo. banc 1979). A detailed review of the evidence on this point would have no precedential value and would serve no other useful purpose.

*State of Missouri v. White*, 646 S.W.2d 804, 806 (Mo.App.1983).

*Seales* adopted the test stated in *Witham v. Mabry*, 596 F.2d 293 (8th Cir.1979), for determining whether a defendant had received the effective assistance of counsel. To establish that an attorney's performance was constitutionally deficient, a criminal defendant must show " 'that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby.' " *Id.* at 298 (quoting *United States v. Hood*, 593 F.2d 293 (8th Cir. 1979)).

The Missouri Court of Appeals focused exclusively on that part of petitioner's argument that the overworked Public Defender failed to skillfully represent petitioner. Petitioner's allegation that he was improperly forced to trial with counsel after an irreconcilable conflict had developed was not discussed.

In *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984), the Supreme Court stated that:

The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.

As a result, the Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.'" *Id.*, 104 S.Ct. at 2064 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970)).

To prevail on a claim that the *performance* of counsel was so defective as to require reversal of a conviction, a criminal defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment ..." and "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 104 S.Ct. at 2064.

■ If the ineffectiveness claim focuses on the state's failure to furnish an attorney at all or on the state's failure to give relief from a demonstrably defective attorney-client relationship, a criminal defendant need not show prejudice, i.e., that the failure to provide counsel or that the defect in the relationship was so serious that the defendant was actually deprived of a fair trial. *Strickland*, 104 S.Ct. at 2067. For instance, if a criminal defendant shows that his counsel actively represented conflicting interests and the conflict of interest actively affected the adequacy of representation, then the defendant "need not demonstrate prejudice in order to obtain relief." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). Prejudice is presumed because "[i]n those circumstances, counsel breaches the duty of

loyalty, perhaps the most basic of counsel's duties." *Strickland*, 104 S.Ct. at 2067.

Similarly, "an accused who is forced to stand trial with the assistance of appointed counsel with whom he has become embroiled in an irreconcilable conflict is denied effective assistance of counsel. The trial court, when confronted by such an allegation, has an obligation to inquire thoroughly into the factual basis of the defendant's dissatisfaction." *United States v. Hart*, 557 F.2d 162, 163 (8th Cir. 1977) (citation omitted). If an attorney and a client have an irreconcilable conflict, essential attributes of a healthy attorney-client relationship are non-existent. For instance, if an irreconcilable conflict exists between a client and his attorney, it is unlikely that an atmosphere conducive to open communication between an attorney and client will exist. Furthermore, a client irreconcilably at odds with his attorney is not likely to believe that counsel is doing his/her best for the client.[1]

■ In the instant case, the Public Defender was appointed to represent petitioner on October 9, 1980. Shortly thereafter defendant began expressing dissatisfaction about his attorney. On December 19, 1980, petitioner wrote Judge Kinder of the Cole County Circuit Court stating:

On December 2, 1980, I wrote Mr. McFadden, the Public Defender, requesting that he send me copies of all the Disclosures allowed by the Prosecuting Attorney, but that Office has disregarded that request. Since I intend to act as

---

**1.** The American Bar Association Standards for Criminal Justice (2d ed. 1982 Supp.) ("The Defense Function") provides in Standard 4–1.1 ("Role of defense counsel") that: "The basic duty the lawyer for the accused owes to the administration of justice is to serve as the accused's counselor and advocate with courage, devotion, and to the utmost of his or her learning and ability and according to law."

The comment to that Standard states in part:
The adversary system requires defense counsel's presence and zealous professional advocacy just as it requires the presence and zealous advocacy of the prosecutor and the constant neutrality of the judge.

· · · · ·

Advocacy is not for the timid, the meek, or the retiring. Our system of justice is inherently contentious, albeit bounded by the rules of professional ethics and decorum, and it demands that the lawyer be inclined toward vigorous advocacy. Nor can a lawyer be half-hearted in the application of his or her energies to a case.

Standard 4–3.1 pertaining to establishing the lawyer-client relationship provides "[d]efense counsel should seek to establish a relationship of trust and confidence with the accused...." The comment to that Standard begings with "[n]othing is more fundamental to the lawyer-client relationship than the establishment of trust and confidence...."

co-counsel, with the Courts' leave, this information is necessary for preparation of a defense. There has not been a single correspondence, nor meeting, between the Public Defender and myself outside of the Courtroom. The Public Defenders' Office has not in any way inquired about the situation that led to my charge or arrest and therefore it would seem an impossible feat to prepare a defense. I feel that even with a crowded calendar this is an unnecessary failure and lack of representation of counsel.

Your Honor, I request that due to the above stated facts and the seriousness and consequences of any conviction that you inquire into this matter, making available all disclosures, allowing me leave to proceed as co-counsel; or in the alternative remove the Public Defender and issue your order for Court Appointed counsel.

As I am preparing several pre-trial motions in this cause to preserve my rights for appealing said issues, I would like to request that you accept this letter as a motiom [sic] in its form regarding counsel and disclosures and issue your order accordingly. I respectfully would like to inform the Court that I will not on any occasion submit any document without merit. I will refrain from submitting a motion about counsel and disclosures until I hear from the Court.

On December 24, 1980, Judge Kinder responded:

You are represented at this time, Mr. White, by the Public Defender's Office. It is not my practice, or do I intend, to allow you to act as co-counsel in this case.

If you wish to represent yourself you may, but you cannot have it both ways. Either you are represented by counsel or you are represented by yourself.

Petitioner replied to Judge Kinder on January 5, 1981:

I received your letter of December 24, 1980. This is to advise you that I will represent myself.[2] I strongly feel that the Public Defenders' Office is unable to represent me or anyone else on their present staff situation. Mr. McFadden is representing an unknown amount of indigent clients and he is without the benefit of any assistant public defenders. Such a caseload is detrimental to all clients and the legality is very questionable.

Petitioner also requested a continuance of the January 20, 1981, trial setting because "to this date there has not been any preparation for a defense other than what I have been able to do."

Petitioner's letter of January 5, 1981, was referred to Judge Riley who responded on January 12, 1981: "I have made an Order granting your request for a continuance, and setting the matter down for February 17, 1981, at 9 a.m. for a trial setting. All Motions will be disposed of on that date, and a new trial date will be set." [3]

On January 19, 1981, petitioner wrote to Judge Riley thanking him for granting a continuance and again expressing frustration with the Public Defender's Office. "I am aware that the Public Defenders' Office may have already received the disclosures

---

**2.** Petitioner had a constitutional right to represent himself. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Having stated his desire to do so, petitioner should have been permitted to represent himself after having been advised by the Court of "the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)).

Forcing a criminal defendant to accept against his will a state-appointed Public Defender deprives the criminal defendant "of his constitutional right to conduct his own defense." *Faretta,* 422 U.S. at 836, 95 S.Ct. at 2542.

Petitioner has not asserted denial of the right to represent himself as a ground for relief in either this habeas corpus action or in state court. Nevertheless, the failure to determine in January, 1981, whether petitioner desired to represent himself contributed to the subsequent confusion over whether petitioner was representing himself or had an attorney.

**3.** This letter appears to acknowledge that petitioner is representing himself. See footnotes 2 and 4.

but I have not. I have requested the same from that Office on at least three occasions, therefore for preparation for trial I have submitted the enclosed documents."

On February 24, 1981, Judge Riley wrote the prosecuting attorney and the Public Defender stating that the case could not be tried until the *pro se* motions filed by petitioner had been ruled. After his attorney failed to call the motions for hearing, petitioner wrote Judge McHenry, who had replaced Judge Riley on March 31, 1981, urging consideration of his *pro se* motions. In a letter dated April 12, 1981, petitioner again raised his concern about the representation he was receiving from the Public Defender's office.

> Secondly, I have letters from the retired Judge Riley and the Honorable Judge Kinder allowing me to represent myself because of allegations I made against [sic] the Public Defender's Office being inadequately staffed. Mr. McFadden could not possibly represent the number of clients assigned by the Courts, Judge Kinders' [sic] recent decision to have various State Attorneys represent indigent clients reinforces my allegation. In view of this would it be proper for me to request the appointment of an attorney at this time? The prosecuting attornies [sic] have made a mockery out of my my [sic] pro se motions and even Judge Riley's order that I be given disclosures. I'll cover that in the next paragraph.

On April 21, 1981, Judge McHenry responded: "In reply to your letter of April 12, 1981, the Court records show that you are represented by Howard L. McFadden, Public Defender of the 19th Judicial Circuit. I would request that you communicate with the Court through him." [4]

Petitioner wrote the Public Defender on April 28, 1981, requesting that the Public Defender review his *pro se* motion to dismiss, and that the Public Defender file an amended motion to dismiss. "If in your opinion my motion to dismiss has no legitimate merit I still wish to have it presented for a hearing."

The Public Defender requested that his investigator contact petitioner. Petitioner testified that he received no response to his April 28, 1981, letter or to other letters he had written to the Public Defender. The Public Defender and his investigator did not dispute this testimony. Petitioner did not discuss his case with his attorney or any representative of the Public Defender's office from that date to May 11, 1981, the date of trial.[5]

Before the trial began, the attorneys and petitioner met with the trial judge in chambers. The judge reviewed the chronology of correspondence from petitioner and the motions filed by him. All *pro se* motions were overruled, not on their merits, but because they had not been properly called up for hearing by petitioner. During the discussion of the motions, the complete breakdown in the attorney-client relationship between the Public Defender and the petitioner became apparent. Petitioner called the judge's attention to his frequently expressed dissatisfaction with the Public Defender and his request on January 5, 1981, to represent himself. The Public Defender characterized himself as "an on-again off-again lawyer...." Tr. 20. He stated that he had not studied petitioner's motions and had no opinion about their validity because he thought Judge Kinder had allowed petitioner to represent himself. He admitted to being puzzled about his role when he received petitioner's letter in late

---

4. Although some court records may have shown that petitioner was represented by the Public Defender, petitioner's letter of January 5, 1981, stating a desire to represent himself was or should have been in the file. The failure to comply with *Faretta* in January, 1981, undoubtedly contributed to overlooking the confusion about whether petitioner was in fact represented by counsel, a confusion shared by the Public

Defender who later referred to himself as an "on-again off-again lawyer."

5. Petitioner did receive two letters from the Public Defender's Office dealing with the possibility of a plea and the date the trial was scheduled, but neither letter responded to petitioner's concern about his *pro se* motions or his concern about inadequate trial preparation.

April, after petitioner had been told that he was still represented by the Public Defender. The judge stated that petitioner had never been granted leave to represent himself, and that the Public Defender had never been granted leave to withdraw. Petitioner and his attorney then got into a dispute over what the Public Defender had done and whether the Public Defender had responded to petitioner's letters. This exchange concluded with the Public Defender stating that he was ready for trial.

However, I don't want to go to trial with you. I don't want to represent you. I am now asking the Court to permit me to withdraw, because you [the petitioner] have messed this case up in such a way that it is going to be a tangled nightmare on appeal; and, frankly, I don't want to engage the resources of my office in that manner. I have too many other overwhelming duties to perform at this time.

Tr. 25. The Court then denied petitioner's request to have another attorney appointed, and denied the Public Defender's motion to withdraw.

Well, here is what is bothering me, Mr. White, more than anything else. I told you on April 21st that the record indicated, and I had no indication otherwise, that you were represented by the Public Defender, I said, communicate through him. You immediately, or virtually immediately, on the 28th of April wrote him about the matter and asked him, among other things, to bring witnesses to this trial today. Now, I have no communication from you since that time, and I presumed until the very moment of this trial that having written you that letter that we had no problem, and now you have presented to the Court a motion entitled "Motion for Continuance and Appointment of Counsel Other Than the Public Defender."

I cannot permit that, Mr. White.

And I cannot permit you to withdraw, Mr. McFadden, at this late date.

We have just gone for months on this thing, if there was any question about any part of this procedure it should have been clarified by the letter of April 21st, which was responded to by you, Mr. White, by a letter to your counsel asking for witnesses to be brought here today; and they will be brought here.

And this motion that you have just filed, as well as the other motions, is also overruled.

Tr. 25–26.

Entrapment was petitioner's only defense at trial. The critical factual issue was whether petitioner or the undercover police officer suggested one Jerry Sordelli as the source of the marijuana. Petitioner testified that the undercover police officer (Beazley, alias Beagle) suggested Sordelli as the source of the drugs. During closing argument the Public Defender argued

Well, all of the State's evidence points to the fact that there was entrapment, and there is no evidence whatsoever leading away from that. Where was the inducement in the first place? In the first contact in the Rathskeller, Beagle walked up to these two perfect strangers, asked if he could join them, and they permitted him to join them. He then provided the inducement for this act by saying: "I would like to get some pot," or words to that effect, "can you get any for me," or "can you sell me some?["] I don't recall his exact words, I am sure you will. He was told by both people that they had none to give him, *but eventually Jeff said, "Well, I know where you can get some."* And that fact is confirmed by the testimony of either Hargrave or Drennan, I don't recall; Hargrave, he was at the Rathskeller.

Tr. 97–98 (emphasis supplied).

The assistant prosecuting attorney responded:

Mr. McFadden in his statement to you a minute ago, admitted to you that when Officer Beazley went into the Rathskeller and asked—he sat down with these two supposed total strangers, and asked if they knew where he could get some marijuana, what happened? The defendant said, "I know where you can get some." He volunteered this. "I know

where you can get some." Now, is he entrapped because the officer asked the question? He wasn't entrapped. He saw a chance to make a deal, and he made it. It's that simple.

Tr. 100–101.

After petitioner was convicted, new counsel was appointed for petitioner. An amended motion for a new trial was filed alleging ineffective assistance of counsel. On August 5, 1981, at a hearing on petitioner's motion for a new trial, the Public Defender testified that in early 1981, he had informed the Missouri Public Defender Commission:

[T]hat the facilities of my office had become overstrained by the case load, and that I was fearful of not being able to keep up. And it was in response to that letter that he subsequently got in contact with Judge Kinder of Division II of this Court, and they devised the scheme whereby lawyers employed by the State of Missouri in this area would be appointed to help out in some of the cases; ...

Tr. 171.

Judge Kinder's April 6, 1981, Order recognizing the overworked Public Defender's office and requiring attorneys working for the State to be available for appointment, was admitted in evidence. This general order provided the appointment of attorneys in cases previously assigned to the Public Defender. The order stated, in part, that:

WHEREAS, at the present time the Public Defender's Office of the 19th Judicial Circuit has in excess of one hundred seventy pending cases for trial and appeal, and

.    .    .    .    .

WHEREAS, the Legislature in its wisdom has funded the Public Defender's Office so that only one full time Public Defender and one part time Public Defender can be employed, and

WHEREAS, the Public Defender and his assistant cannot physically dispose of the current case load within one hundred eighty days, and

.    .    .    .    .

WHEREAS, the ends of justice will be served by your appointment as counsel to assist in the defense of indigents.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED as follows:

1. That you are hereby commanded, setting aside all manner of excuse and delay, to be and appear in proper person before me, Bryon L. Kinder, Presiding Judge of the 19th Judicial Circuit, at the Court House in Jefferson City, Missouri, on the 20th day of April at 1:00 p.m., 1981, to be appointed as counsel for such case or cases as this Court deems fit. Fail not to appear at your own peril.

Shortly after this order was entered, the Public Defender's caseload climbed to 205 cases.

■ In analyzing the significance of these facts to petitioner's claim of ineffective assistance of counsel, this Court is mindful that "the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment." *Strickland*, 104 S.Ct. at 2070. Therefore, habeas relief should be granted only upon a showing that a criminal defendant has been denied the assistance of effective counsel *and* that "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 2069. Fundamental fairness is the focus of both the Sixth Amendment and the writ of habeas corpus. *Id.* at 2069–70.

■ Even though substantial deference should be paid to the trial judge's belief that petitioner was engaging in a last-minute disruptive tactic, an examination of the record would have revealed petitioner's longstanding discontent with an overworked Public Defender, judicial recognition of the Public Defender's excessive caseload and inadequate funding, and peti-

tioner's request to represent himself filed months before. Even if the trial judge reasonably concluded that petitioner was attempting to disrupt the trial setting, the Public Defender's dissatisfaction with the relationship and his desire to be relieved was not thereby explained.

With both the attorney and the criminal defendant expressing dissatisfaction with the relationship, a careful examination into the nature of the disagreement, its duration and the impact it would have on the conduct of the defense should have been conducted. *Hart*, 557 F.2d at 163. Had the reasons for the conflict been fully explored, the air might have been cleared. On the other hand, the completeness of the rift between the two might have been established. Without the benefit of the hearing required by *Hart* the record establishes an irreconcilable dissatisfaction on the part of both the Public Defender and the petitioner with their relationship. Minutes before the trial began, the petitioner and the Public Defender made it clear that they did not want to continue with the attorney-client relationship. The attorney-client relationship was effectively dead when the attorney stated "I don't want to go to trial with you; I don't want to represent you." Tr. 25.

Under these circumstances, petitioner need not show that he was actually prejudiced by the irreconcilable conflict with his counsel. Prejudice should be presumed from a fractured attorney-client relationship just as it would be if the petitioner had been denied the assistance of counsel or if petitioner's appointed counsel had a conflict of interest. *See Strickland*, 104 S.Ct. at 2067; *Cuyler*, 446 U.S. at 349–50, 100 S.Ct. at 1718–19; *Holloway v. Arkansas*, 435 U.S. 475, 488, 98 S.Ct. 1173, 1180, 55 L.Ed.2d 426 (1978).

If prejudice needed to be shown, the Public Defender's crucial misstatement in closing argument undoubtedly doomed whatever chance, however slim, petitioner had of persuading the jury that he had been entrapped. The Public Defender's lack of enthusiasm for representing petitioner may well have contributed to the slip.

Petitioner was denied the effective assistance of counsel guaranteed by the Sixth Amendment and, therefore, is entitled to relief.

### Alleged Violations of Petitioner's Due Process Rights

■ Petitioner alleges that his due process rights were violated because the State should have made certain pretrial disclosures directly to him as well as to his attorney.

After a full review, the Missouri Court of Appeals concluded that the prosecuting attorney made full disclosure to the Public Defender who represented petitioner, and that there was no duty to make duplicate disclosure to petitioner personally. *State v. White*, 646 S.W.2d at 807.

The Public Defender requested disclosure from the prosecuting attorney pursuant to Rule 25.03, Missouri Rules of Criminal Procedure. Rule 25.03 requires that disclosure by the state be made to defendant's counsel, not to defendant directly when a defendant is represented by counsel. Disclosure was made to petitioner's counsel on December 8, 1980, before petitioner requested leave to represent himself. Petitioner does not deny that disclosure was made to his attorney. Due process does not require disclosure directly to petitioner when he is represented by counsel. Therefore, petitioner's claim that he was denied pretrial disclosure is without merit.

■ Petitioner also claims that his due process rights were violated because the state court failed to consider his pretrial motions. These motions included a motion for bill of particulars, a motion to dismiss the indictment, the information and/or the complaint, and the motion for disclosure discussed above. Even if the motions should have been heard, the failure to grant the relief requested does not implicate a specific constitutional right. "In a habeas corpus proceeding a justiciable federal issue is presented only when trial er-

rors infringe upon a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Arnold v. Wyrick*, 646 F.2d 1225, 1228–29 (8th Cir.1981).

Furthermore, the Missouri Court of Appeals reasonably concluded that "[a]ll of defendant's pro se motions wholly lacked substance. The failure of the court to rule those motions on the merits therefore resulted in no prejudice to defendant." *White*, 646 S.W.2d at 807.

### Alleged Double Jeopardy Resulting from Amendment of Petitioner's Sentence

■ Petitioner alleges that he was subjected to double jeopardy because the state court brought petitioner back to court to correct his sentence the day after he was initially sentenced.

Petitioner was sentenced on August 17, 1981, to five years imprisonment on Count I and ten years imprisonment on Count II. During the sentencing on August 17, 1981, the judge did not state whether these sentences were to be served concurrently or consecutively. Furthermore, the judge failed to state whether these sentences would run concurrently with or consecutively to the sentence petitioner was then serving.

Approximately thirty minutes after sentencing, the judge realized his mistake, but petitioner was already on his way back to Moberly where he was incarcerated. Defendant was brought back to court the next day, August 18, 1981. The judge stated that because the judgment and sentence had not been entered on the docket sheet, he was correcting petitioner's sentence by specifying that the sentences on Counts I and II were to be served concurrently with each other. These sentences were to run consecutively to the sentence petitioner was then serving.

The state court did not lose jurisdiction over the sentence until the sentence had been "entered" by making a written record on the docket sheet. *State v. Lance*, 561 S.W.2d 445, 446 (Mo.App.1978); *City of Riverside v. Johnson*, 507 S.W.2d 48, 49

(Mo.App.1974). Additionally, the United States Supreme Court "has rejected the 'doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether because the court committed an error in passing the sentence.'" *Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 649, 91 L.Ed. 818 (1947), citing *In re Bonner*, 151 U.S. 242, 260, 14 S.Ct. 323, 327, 38 L.Ed. 149 (1894); *See also United States v. DiFrancesco*, 449 U.S. 117, 135, 101 S.Ct. 426, 436, 66 L.Ed.2d 328 (1980). In *Bozza v. United States*, the defendant was convicted of violating the Internal Revenue laws in connection with the operation of a still. The crime carried a mandatory minimum sentence of a fine and imprisonment, but the trial court sentenced the defendant to imprisonment only. Five hours later the judge recalled the defendant and imposed a fine in addition to the imprisonment. The United States Supreme Court held that recalling the defendant to correct his sentence "did not twice put petitioner in jeopardy for the same offense." *Bozza v. United States*, 330 U.S. at 167, 67 S.Ct. at 649.

Here, although the time lapse is somewhat longer than in *Bozza*, the principle is the same. The correction of the confusion in petitioner's sentence "did not twice put petitioner in jeopardy for the same offense." *Id.*

### Alleged Insufficient Evidence to Rebut Entrapment Defense

Petitioner alleges that his conviction was in violation of state law because the state failed to rebut the testimony of entrapment by petitioner and petitioner's witnesses. In opposition, respondent argues that the evidence petitioner claims the state should have presented in rebuttal was presented during the state's case in chief.

The Court seriously doubts whether this ground presents an issue of federal constitutional significance cognizable under § 2254. Nevertheless, it will be analyzed on its merits.

Under Missouri law, an issue of entrapment arises when there is substantial evidence that defendant was induced to commit the crime by a governmental agent. The prosecution then has the burden to produce evidence that the criminal intent did not originate with the governmental agent, but rather in the mind of the defendant. Absent such proof, the defendant must be acquitted. *State v. Decker,* 321 Mo. 1163, 14 S.W.2d 617, 619–20 (1929); *State v. Weinzerl,* 495 S.W.2d 137, 142 (Mo.App.1973).

During the state's case in chief, Officer Beazley testified that during a conversation petitioner stated he had marijuana to sell. Petitioner and his two witnesses testified that it was Beazley who approached petitioner and who first suggested that petitioner purchase marijuana from Beazley. Petitioner's evidence was directly contradicted by Beazley's testimony given during the state's case in chief. The state appellate court stated that "if the contradictory testimony appears in the direct evidence of the state's witness, it would be the height of redundancy to require that the state recall the same witness in order to repeat the identical testimony as procedural 'rebuttal'." *State v. White,* 646 S.W.2d 804, 808 (Mo.App.1982). This conclusion does not violate any federal constitutional right.

For these reasons, it is hereby ORDERED that

1) petitioner's claim that he was denied the right to file timely a motion for new trial is severed and dismissed without prejudice because available state remedies have not been exhausted;

2) habeas corpus relief is granted because petitioner was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution;

3) all other grounds for habeas corpus relief are dismissed with prejudice; and

4) within thirty-one days from the date of this Order, the state must discharge petitioner from the sentence imposed on August 18, 1981, subject to the right, if any, of the state to retry petitioner on the same charges.