Robert E. PORTER, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 35486.

Missouri Court of Appeals,
Western District.

Sept. 25, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Nov. 27, 1984.

Application to Transfer Denied
Jan. 15, 1985.

James Fletcher, Public Defender, Kevin Locke, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before CLARK, P.J., and DIXON and LOWENSTEIN, JJ.

CLARK, Presiding Judge.

Appellant was convicted by a jury of the offenses of murder in the second degree and first degree assault. The convictions were affirmed on direct appeal. *State v. Porter*, 640 S.W.2d 125 (Mo.1982). In this proceeding under Rule 27.26, Porter sought to set aside the judgment and consecutive life sentences on various grounds. The trial court denied relief. Porter now appeals contending in a single point of error that ineffective assistance of counsel at the criminal trial was demonstrated. Affirmed.

Because the claim of deficient representation by counsel is associated with the presentation of evidence, some review of the facts is necessary. From the testimony by the state's witnesses, the jury in the case was entitled to find that on the evening of January 7, 1981, Porter went to the home of a neighbor, William Long, for the purpose of borrowing money. Porter had been a frequent visitor at the Long home in the past, had done some minor jobs for Long and had participated in dice and card games there. Long had advanced Porter small sums of money in the past.

As Porter was admitted to the house by Long, he found another neighbor, James Jones, also to be there. Long was at the time attempting to sell some objects in a garage type sale and Jones was looking at the merchandise. Jones had been a participant in the card and dice games in the past and was known to carry several hundred dollars in currency on his person. After exchanging some remarks, Porter asked Long for a loan. Long replied that he had no funds and Porter then made his request of Jones. The latter also declined saying he had no money to loan. Porter then moved to the front door of the residence, as if to leave, but before departing he turned toward Long and fired three shots from a revolver striking Long in the head, body and hip.

At this point, Long fell to a chair and closed his eyes feigning death in the hope Porter would not shoot again. While his eyes were closed, Long heard another shot fired followed by the closing of the front door. Before losing consciousness, Long used a telephone to call the police. Officers soon arrived and transported the victims to a hospital where Jones was pronounced dead. As a consequence, the only witnesses to the events in the Long home the evening of January 7 were Long and Porter. Consistently from his first interrogation by the police through his evidence at trial, Long named Porter as the assailant.

The only evidence presented at trial which linked Porter to the crimes was the testimony by Long described above. For his part, Porter denied the account by Long contending he was at a friend's house, together with his girl friend, throughout the evening and until the next morning. Porter's companions confirmed the alibi. Defense counsel attacked Long's identification evidence by attempting to show that Long was an alcoholic and that his recognition of the assailant was suspect because of his intoxicated state the night of Janu-

ary 7. By Long's own admission, he was accustomed to consuming eighteen beers a day, and on the night in question, he had drunk two shots of whiskey and was drinking his second beer when Porter arrived at his home.

The defense adduced evidence as to Long's alcohol intoxication, not only from cross examination of Long, but from medical records at the hospital and from testimony by a physician and a police officer. The substance of that evidence was that Long had the odor of alcohol about him when he was taken to the hospital, that he exhibited withdrawal symptoms necessitating intravenous injection of alcohol, that he suffered from hallucinations and that he was incoherent when a police officer attempted to question him about the shooting. The strategy of the defense was to rely on Porter's alibi and to cast doubt on Long's identification evidence by suggesting that his intoxicated state precluded reliability.

At the hearing on the 27.26 motion, Porter contended that his trial attorney had failed to provide adequate representation in that counsel did not call Porter's sister, Teresa, as a defense witness despite the fact that she had relevant and material evidence to supply. That evidence, described by both Porter and Teresa at the hearing consisted of a statement made to Teresa by Long subsequent to the crime. According to Teresa, she had engaged Long in a conversation and had inquired if he was certain it was Porter who had committed the offenses. Long had replied, "No, I can't really say." This was reported by Porter to defense counsel during trial preparation. The attorney told Porter the testimony would not aid his case and Teresa would not be endorsed or called as a witness. No testimony was available from the attorney to explain his decision because the attorney had died before the motion was heard.

On appeal, Porter contends his evidence in support of his Rule 27.26 motion was sufficient to sustain his burden of demonstrating ineffective assistance of counsel because the failure to call Teresa as a defense witness proved inexcusable neglect by the attorney. On this account he asserts that the decision of the trial court overruling his motion was in error.

■ At the outset, we reject the claim that the facts demonstrate attorney neglect. Whatever may be said of the attorney's choice not to call Teresa, it was, by Porter's own testimony, a decision made by the attorney in determining what would or would not be beneficial defense evidence. Porter stresses that the attorney reached a decision on the matter abruptly and without interviewing Teresa. Some cases have turned on incomplete investigation by defense counsel where leads to potential evidence were not pursued and where possible witnesses were not contacted. This is not such a case.

It is true the attorney did not contact Teresa to obtain first hand from her the content of her conversation with Long, but that was unnecessary to make a decision about using the witness. The account of Teresa's conversation was brief and simple. The attorney was entitled to assume Teresa would be a willing witness and would repeat from the stand the same account given Porter. On the facts, the attorney decided Porter's case would best be presented by not using Teresa's testimony. Whether, in retrospect, the choice by the lawyer was flawed or sound, it was in all events a calculated decision in the composition of the defense presentation. The case is distinguishable from those in which, by neglect, lethargy or ignorance, the defense attorney is charged to have failed to present defense evidence.

■ The cases have consistently held that selection of witnesses to be called is a matter of trial strategy. *Franklin v. State*, 655 S.W.2d 561, 565 (Mo.App.1983). Even if later shown to be wrong, a decision made as to trial strategy does not support a finding of ineffective assistance. *Gentile v. State*, 637 S.W.2d 30 (Mo.App.1982). These principles would seem to resolve the question here, but on closer analysis, they do not answer Porter's assertion, first that

there was no explanation of any reasoned basis for the attorney's decision not to call Teresa, in the absence of testimony from him and, second, that the facts lead to no hypothesis suggesting any ground not to use the witness to aid the defense challenge to Long's credibility. The briefs indulge speculation on the subject, but this is to no profit because the reasoning process used by the deceased attorney is incapable of reconstruction.

In *Brame v. State*, 597 S.W.2d 665 (Mo. App.1980), this court examined in detail the aspects of an ineffective assistance of counsel claim where counsel has made choices as to the conduct of the trial and presentation of the defense. It was there said:

> "By the very nature of a criminal trial, a lawyer's function is a continuing judgmental process. Choices are constantly presented for one alternative action or another, often in a shifting factual situation with little or no time for reflective thought before decision is required. * * Factors which influence those practical judgments are often subtle and not apparent on a cold record. * * * Likewise, in the setting of a criminal trial, the alternatives may be all bad." *Brame* at p. 669.

The opinion holds that the constitutional requirement for effective assistance of counsel assumes inability of the accused to make the judgments as to alternate courses available in trial and therefore the decisions counsel makes are insulated from hindsight criticism by the client through the very nature of the client-attorney relationship.

Missouri case law has been in the forefront of developing trends in this area as is confirmed by the rationale adopted in *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Justice O'Connor, writing for the court, described the limits upon post-hoc evaluation of counsel effectiveness in the following terms, which correspond to previous Missouri decisions on the subject:

> "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy' (citation omitted)." *Strickland* 104 S.Ct. at p. 2065–66.

The court concluded in *Strickland* that strategic choices made by counsel with knowledge of the law, the facts and plausible options are "virtually unchallengeable."

■ From the foregoing, we conclude that where a claim of ineffective counsel is raised in a post-conviction proceeding and the attorney conduct involves the exercise of a choice in the presentation of the defense or the procedures selected in trial, the claim must fail if, within a wide range of reasonable professional assistance, the choice may be considered sound trial strategy. Of necessity, each case must be evaluated on its facts. A strong presumption of right action, however, severely limits such ineffective assistance claims to the end that it will be the rare exception where a strategic choice is declared to have been unsound.

■ In the present case, the decision not to call Porter's sister as a witness was a choice of trial strategy made within the wide range of reasonable professional service to Porter by his attorney. The record fails to demonstrate otherwise or to persuade that Porter has overcome the strong presumption that the strategy was sound, notwithstanding the adverse verdict returned by the jury. This conclusion renders it unnecessary to speculate on

grounds for the choice of strategy or to discuss the subordinate question of whether a demonstrably different result would have followed had the witness been called.

The judgment is affirmed.

All concur.