Doyle J. WILLIAMS, Petitioner,

v.

Bill ARMONTROUT, Respondent.

No. 87–0533–CV–W–1.

United States District Court,
W.D. Missouri, W.D.

Nov. 9, 1987.

William Webster, Mo. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, Senior District Judge.

### I

This is a State prisoner habeas corpus case. Petitioner is presently in custody pursuant to the sentence and judgment of the Circuit Court of Moniteau County, Missouri. Petitioner was found guilty by a jury of a charge of attempting to obtain by fraud a controlled substance and was sentenced to life imprisonment. His conviction was affirmed on direct appeal in *State v. Williams*, 678 S.W.2d 430 (Mo.App.1984).

Petitioner's Missouri Rule 27.26 motion for postconviction relief was denied after evidentiary hearing. That denial was affirmed by the Missouri Court of Appeals, Western District. *See* Exh. J (the court's unpublished memorandum of reasons for order affirming pursuant to Rule 84.16(b)).

On August 31, 1987 this Court entered orders for reasons that were fully stated which, among other things, (1) denied respondent's prayer in the response to this Court's order to show cause that this case be dismissed without further proceedings, (2) directed the Attorney General to file a brief on the merits, and (3) required the petitioner to state whether he wished to proceed *pro se* or whether he wished the Court to appoint counsel to represent him as this Court had offered to do. Petitioner declined that offer and filed a *pro se* brief in response to the Attorney General's brief on the merits.

We have considered the files and records in this case and the briefs filed on the merits by the parties. We find and conclude that the petitioner's petition for habeas corpus should be denied for the reasons we now state.

### II

The petitioner alleged as his first ground for federal habeas corpus relief

Doyle J. Williams, pro se.

that the trial court was without jurisdiction to try him for the reason petitioner was taken into custody under an arrest warrant that had been issued by a clerk of the circuit court. Petitioner contends that the Missouri Court of Appeals, Western District, failed to "honor" *In re Harris,* 593 S.W.2d 517 (Mo. banc 1979), and *In re Green,* 593 S.W.2d 518 (Mo. banc 1979), which concluded that an arrest warrant issued by a clerk of a court was constitutionally invalid.[1] Petitioner's Brief (hereinafter Brief) at 2.

Petitioner's argument is untenable. *Harris* and *Green* properly granted state habeas corpus relief to pretrial detainees in accordance with the mandate of *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed. 2d 54 (1975). *Gerstein,* as did *Harris* and *Green,* presented the question of "whether a person arrested and held for trial on an information is entitled to a judicial determination of probable cause for detention." 420 U.S. at 111, 95 S.Ct. at 861. The Court held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id.* at 114, 95 S.Ct. at 863.

*Gerstein,* however, made clear that in "holding that the prosecutor's assessment of probable cause is not sufficient alone to justify restraint of liberty pending trial, we do not ... retreat from the established rule that illegal arrest or detention does not void a subsequent conviction. *Frisbie v. Collins,* 342 U.S. 519 [72 S.Ct. 509, 96 L.Ed. 541] (1952); *Ker v. Illinois,* 119 U.S. 436 [7 S.Ct. 225, 30 L.Ed. 421] (1886)."[2] *Id.* at 118–19, 95 S.Ct. at 865. In addition, the Court expressly approved the Fifth Circuit's conclusion that "a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Id.* at

119, 95 S.Ct. at 866. Finally, we have considered *Saldana v. State of N.Y.,* 665 F.Supp. 271 (S.D.N.Y.1987), to which petitioner directed our attention in a recent letter, and conclude that case does not support petitioner's argument.

We therefore find and conclude that the fact that the petitioner may have been illegally arrested and detained pending trial without a determination of probable cause by a judicial officer of the State of Missouri does not support the first ground relied on by petitioner for federal habeas corpus relief.

### III

The petitioner alleged as his second ground for federal habeas relief that the State trial court imposed an illegal sentence in that petitioner was sentenced under Section 558.016, Missouri's general persistent offender statute, rather than Section 195.200.1, which petitioner contends has a "built in enhancement provision." Petitioner relies on *State v. Smith,* 591 S.W.2d 263 (Mo.App.1979); *State v. Acton,* 594 S.W.2d 347 (Mo.App.1980), in support of his position.

Both those cases, however, presented the question of whether the sentencing procedure provided in Missouri's repealed Second Offender Act, Section 556.280. R.S.Mo. 1969, could be applied to the Missouri's repealed driving while intoxicated statute, Section 564.440, R.S. Mo. 1969. The conclusion of the Missouri Court of Appeals, Western District, that the Second Offender Act was not to be applied to a conviction under Section 556.280 was not based on any federal constitutional ground. Rather, both cases simply reflect a State appellate court's construction of the statutes of Missouri.

---

1. Exhibit A attached to petitioner's appellate reply brief on direct appeal establishes that the arrest warrant was signed by the clerk rather than the judge of the Circuit Court of Boone County, Missouri.

2. In *Frisbie v. Collins,* 342 U.S. at 522, 72 S.Ct. at 511, the Court stated that "[t]his Court has never departed from the rule announced in *Ker v.*

*Illinois* 119 U.S. 436, 444, [7 S.Ct. 225, 229], that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'" *Ker,* decided in 1886, affirmed an Illinois conviction of a defendant who was brought before the state trial court after he had been kidnapped in Lima, Peru.

The Attorney General contends that the second ground relied upon by petitioner presents only a question of state law that is not cognizable in a federal habeas corpus proceeding. We agree. The Eighth Circuit recently held in *Martin v. Solem*, 801 F.2d 324, 327 (8th Cir.1986), that "[w]ith the exception of due process claims, state prisoners' claims of error involving sentencing, ... are matters governed by state law that are not cognizable in federal habeas corpus proceedings." The question of whether prior federal convictions may be used to enhance petitioner's punishment does not present either a due process question or any other federal constitutional question. *See Gabel v. McCotter*, 803 F.2d 814, *on rehearing*, 806 F.2d 1257, 1258 (5th Cir.1986) ("Gabel's claim that a federal offense was improperly used to enhance his state conviction is not cognizable on federal habeas corpus review.")

We find and conclude that petitioner is not entitled to federal habeas corpus relief under the second ground alleged in his pending petition.

### IV

In Order (4) of this Court's August 31, 1987 memorandum and orders directing further proceedings, we granted petitioner's motion to dismiss ground three of his pending petition for habeas corpus. Petitioner filed that motion in order to moot the Attorney General's *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), mixed petition exhaustion argument. The granting of that motion did moot that argument and ground three of

petitioner's petition is therefore not before the Court for determination.

### V

Petitioner alleged as the fourth ground of his petition for habeas corpus that the "trial court erred in compelling Movant to proceed to trial while represented by counsel who was embroiled in irreconcilable conflict with Movant." Petitioner cited and relied on *White v. White*, 602 F.Supp. 173 (W.D.Mo.1984), and *United States v. Hart*, 557 F.2d 162 (8th Cir.1977), to support that claim. Petitioner further alleged that this "point should also be considered as a denial of ineffective assistance of counsel." [3]

Petitioner's brief requests that we consider the arguments and legal authorities present on pages 11 to 18 and 39 to 41 of his *pro se* Rule 27.26 appellate brief filed in the Missouri Court of Appeals, Western District. Those pages of that brief show that petitioner's "irreconcilable conflict" claim was presented to the Missouri Court of Appeals, Western District, as only one of the reasons petitioner claimed he had been denied effective assistance of counsel. Petitioner stated on page 11 of that brief that "irreconcilable conflict" was the first reason that he had been denied his Sixth Amendment right to effective assistance of counsel. Petitioner argued in support of that separate reason that "when a criminal defendant is forced to stand trial with the assistance of appointed counsel with whom he has become embroiled in an irreconcilable conflict he is denied effective assistance of counsel." Exh. H–1 at 11.[4] Petitioner's Rule 27.26 appellant's brief placed primary

---

3. As will later be noted, petitioner alleged as ground 5a of his petition that he was denied effective assistance for the separate reason that "counsel proceeded to represent Movant knowing there was an irreconcilable conflict between Movant and counsel."

4. Petitioner cited and relied on *United States v. Hart, supra,* and *White v. White, supra,* together with *Brown v. Craven,* 424 F.2d 1166 (9th Cir. 1970) (upon which the Eighth Circuit relied in *Hart* ) to support that argument. Although *Hart* contains language to the effect that the Eighth Circuit had no quarrel with a proposition stated by the Ninth Circuit in *Brown v. Craven* in regard to the consequences that may flow from a factual showing of an "irreconcilable conflict"

between a defendant and his appointed counsel (*see* 602 F.Supp. at 176), neither *Hart* nor *Brown v. Craven* need be discussed in any detail. For in *Hart* the Eighth Circuit affirmed a denial of habeas corpus on the ground the petitioner, although afforded a full opportunity to do so, failed to "show justifiable dissatisfaction with his appointed counsel." 557 F.2d at 163. *Brown v. Craven* is distinguishable on its facts for the reason that the state trial judge in that case "summarily denied" the defendant's *pro se* motions for the appointment of substitute counsel without making any "adequate inquiry into the cause of Brown's dissatisfaction with his counsel." 424 F.2d at 1169.

reliance on *White* and the cases cited in that case to support his ineffective assistance claim.[5]

While it is doubtful whether petitioner may convert the ineffective assistance claim he presented to the courts of Missouri into some sort of a separate and independent ground for federal habeas corpus relief, we have concluded that it is appropriate that this Court discuss *White* in some detail. For in his Rule 27.26 appellant's brief, petitioner twice quoted the paragraph of Judge Bartlett's opinion in *White* (*see* 602 F.Supp. at 181), in which it was concluded that under the factual circumstances of that case the "petitioner need not show that he was actually prejudiced by the irreconcilable conflict with his counsel." *Id.* at 17, 40. Petitioner argued in his Rule 27.26 appellant's brief that *White* was "directly on point" (*id.* at 16), and that under that case "the defendant need not show prejudice." *Id.* at 17. On page 40 of that brief, petitioner reiterated that he "need not show 'actual prejudice' to prevail." The Missouri Court of Appeals, Western District, rejected but did not discuss petitioner's argument based on *White*.

■ We conclude that petitioner's broad reading of *White* is untenable for several reasons. Review of the Court's opinions in the conflict of interest cases discussing a single lawyer's representation of multiple criminal defendants from *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), through *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), *Strickland v. Washington*, 466 U.S. 668,

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and most recently, *Burger v. Kemp*, —— U.S. ——, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987), establishes that the presumption of prejudice rule stated in *Glasser* for such cases has been subjected to substantial modification and change since *Glasser* was decided 45 years ago. It is enough to say for present purposes that the Court concluded in *Strickland* that the rule in multiple representation conflict of interest cases "is not quite the *per se* rule of prejudice that exists" for other Sixth Amendment claims which involve "actual or constructive denial of the assistance of counsel altogether." 466 U.S. at 692, 104 S.Ct. at 2067. Rather, *Strickland* concluded that in multiple representation cases "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' *and* that 'an actual conflict of interest adversely affected his lawyer's performance.' *Cuyler v. Sullivan, supra*, [446 U.S.] at 350, 348, [100 S.Ct. at 1719, 1718] (footnote omitted)." *Id.* (Emphasis added).

It is thus clear that while a petitioner in a multiple representation conflict of interest case may not have the burden of establishing prejudice in precisely the same manner required in other Sixth Amendment ineffective assistance cases, such a petitioner must nevertheless establish both (1) the existence of an actual conflict and (2) that the actual conflict adversely affected his lawyer's performance.[6]

The second reason that requires this Court to reject petitioner's argument that he need not show any sort of prejudice in this case is that this Court is under duty to follow our controlling Court of Appeals'

---

5. Judge Bartlett cited *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980), and *Holloway v. Arkansas*, 435 U.S. 475, 488, 98 S.Ct. 1173, 1180, 55 L.Ed.2d 426 (1978), to support the paragraph of the opinion in *White* upon which petitioner attempt to rely.

6. In something of an understatement, Justice Blackmun commented in his dissenting opinion in *Burger v. Kemp* that the "distinction between a prejudice showing and a showing of adverse

effect on an attorney's performance apparently has been difficult for some courts to discern." Dissent —— U.S. at ——, n. 6, 107 S.Ct. at 3128, n. 6. Judge Urban in *Parker v. Parratt*, 504 F.Supp. 690, 698 (D.Neb.1981), stated that the "language in *Sullivan* is problematic" and posed the question "where is the line to be drawn between actual prejudice and a presumably higher amount of material prejudice?" As will be noted in the text, Judge Urban's application of the *Cuyler v. Sullivan* standard was reversed by the Court of Appeals for the Eighth Circuit.

decision in *Parker v. Parratt,* 662 F.2d 479 (8th Cir.1981), *cert. denied,* 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 91 (1982). *Parker* was decided after *Cuyler v. Sullivan* was decided in 1981 but before *Strickland* was decided in 1984. In apparent anticipation of *Strickland*'s reading of *Cuyler v. Sullivan,* the Eighth Circuit concluded in *Parker v. Parratt* that under *Cuyler v. Sullivan*'s reading of *Holloway v. Arkansas:*

> a two-step test must be met in a case of multiple representation of conflicting interests. A claimant must establish: (1) actual conflict of interest; and (2) adverse effect on the lawyer's representation.[7]

662 F.2d 479, 484 (8th Cir.1981).

The third reason why petitioner's independent conflict of interest argument is untenable is that any claim that the petitioner may make that an actual conflict of interest adversely affected his lawyer's performance is based on precisely the same factual circumstances of the other alleged ineffective assistance claims upon which petitioner bases his alleged right to post-conviction relief.

Separate findings that the petitioner has failed to establish any of his other alleged ineffective assistance claims would necessarily require a further finding that whatever actual conflict of interest may have in fact existed between petitioner and his counsel, such conflict could not, on the facts, have "adversely affected his lawyer's performance" within the meaning of the second prong of the two-step test articulated in *Cuyler v. Sullivan,* 446 U.S. at 348, 350, 100 S.Ct. at 1718, 1719.

In apparent recognition of Judge Bartlett's alternative finding in *White* that the petitioner did, in fact, suffer prejudice,[8] the petitioner argued in his Rule 27.26 appellant's brief that "if this Court demands that Appellant show prejudice ... appellant is in a position to do so." Exh. H–1 at 17. Petitioner then argued that: "Counsel failed to properly question the State's key witness, ... failed to object to an illegal search of Appellant's car and failed to secure the testimony of Betty Williams and Edward Dunham, just to name a few of the prejudicial errors. (See said points of error in this brief.)" *Id.* at 17–18. And on pages 40–41 of his Rule 27.26 appellant's brief, petitioner reiterated his argument that "Appellant is in a position to show prejudice; i.e. (i) failure to properly question Ernest and Morrow ... failure to suppress the evidence illegally seized from Appellant's car ... [and] from the failure to present the testimony of Betty C. Williams and Edward Dunham."[9]

Petitioner's ineffective assistance claim that defense counsel failed to properly question Ernest and Morrow is specifically alleged as ground 5b of petitioner's pending petition for habeas corpus. Defense counsel's alleged failure to suppress the evidence illegally seized from Appellant's car is specifically alleged as ground 5c of that petition. And defense counsel's alleged failure to present the testimony of Betty Williams and Edward Dunham is specifically alleged as ground 5d of that petition.

It is thus apparent that any claim that the alleged "irreconcilable conflict" provoked by his counsel's motion to withdraw "adversely affected his lawyer's perform-

---

7. *See also Christian v. Housewright,* 721 F.2d 240, 243 (8th Cir.1983), in which the Eighth Circuit reiterated that "a two-step test must be met in a case of conflicting interests. A defendant must establish: '(1) actual conflict of interest; and (2) adverse effect on the lawyer's representation.' *Parker v. Parratt,* 662 F.2d at 484."

8. *See* Judge Bartlett's detailed discussion of the factual circumstances established by the record in *White,* 602 F.Supp. at 175–81, and his conclusion that if "prejudice needed to be shown, the Public Defender's crucial misstatement in closing argument undoubtedly doomed whatever

chance, however slim, petitioner had of persuading the jury that he had been entrapped" *Id.* at 181.

9. In footnote 5 on page 41 of that brief, petitioner stated that he had separately briefed all of the matters that he contended established prejudice under his "irreconcilable conflict" argument as specific ineffective assistance claims and requested that the court "review and consider the arguments and authorities presented in each of these points in considering this point of error."

ance" rests solely on the specific instances upon which petitioner relies to support his specific claims of ineffective assistance of counsel.

The Missouri Court of Appeals, Western District, did not discuss *White* or any other federal cases when it rejected petitioner's ineffective assistance claim based on petitioner's "irreconcilable conflict" argument.[10] Our review of the State court files and records establishes, however, that the Missouri Court of Appeals, Western District, reliably found that the Rule 27.26 record established that:

> [P]rior to trial, a hearing was held on counsel's motion to withdraw. In that hearing, it was obvious that movant had monies with which to hire counsel and yet counsel was appointed by the court to represent him. It is also obvious that counsel had no desire to represent movant without being paid for his service. This hearing also disclosed that movant had, in fact, hired another attorney to represent him in this proceeding who withdrew after the preliminary hearing. This record also discloses that while counsel did not wish to represent movant without being paid, this same counsel, on the record, declared to the trial court that he would represent movant to the best of his ability.

Exh. J at 5.

The Missouri Court of Appeals, Western District, concluded that the petitioner's "bare assertion of an irreconcilable conflict" was not determinative but that the determination of petitioner's right to post-conviction relief must be made on "whether counsel's performance fell below the standard prescribed for attorneys in the performance of their representation of clients." *Id.* at 6. That Rule 27.26 appellate court further concluded that the petitioner "has failed to establish any 'irreconcilable conflict' which established any ineffectiveness of trial defense counsel...." *Id.* at 7.

The determination of whether any assumed conflict of interest "adversely affected [petitioner's] lawyer's performance" (446 U.S. at 350, 348, 100 S.Ct. at 1719, 1718) under the circumstances of this case, must be said to turn on the question of whether petitioner was, in fact, denied effective assistance of counsel in regard to the specific claims presented to the State courts which are now alleged as grounds for federal habeas relief.

We therefore turn to petitioner's specific claims of ineffective assistance.

## VI

### A.

Paragraph 5a of petitioner's petition for habeas corpus, as we have noted, alleges that he was denied effective assistance of counsel at trial for the reason that "[c]ounsel proceeded to represent Movant knowing there was an irreconcilable conflict between Movant and counsel, *WHITE*, supra." Further discussion of petitioner's "irreconcilable conflict" argument would be redundant. Unless petitioner carries the burden of showing that his lawyer's performance at trial was adversely affected by the ineffective assistance of his counsel, as alleged in paragraphs 5b, 5c, or 5d of his petition, he will have failed to establish a right to federal habeas corpus under the ground alleged in paragraph 5a of his petition.

### B.

In paragraph 5b of his petition for habeas corpus petitioner alleged that he was "denied effective assistance of counsel at trial" for the reason that:

> Counsel failed to properly question the State's witnesses, Judith Dee Ernest and Donna Morrow, in such a manner as to make the jury aware of the fact that Ernest could not identify the signature of Dcotor [sic] Domman [sic] and that Morrow's idenification [sic] of Movant was a product of improper suggestive-

---

10. Nor did the Attorney General discuss *White* or any other federal cases in the part of the respondent's brief that discussed petitioner's "ir-

reconcilable conflict" argument. *See* Exh. I at 12–15.

ness by the State. Counsel also fialed [sic] to petition trial court to suppresss [sic] the testimony of Morrow for said grounds. See *U.S. VS. TUCKER*, 715 [716] F.2d 576 (9th Cir.1983) and *McCLE-SKY [McCLESKEY] VS. ZANT*, 580 F.Supp. 338 (D.Ct.N.D.Ga.1984).

Petitioner's brief in this Court requests that this Court "consider the authorities and arguments presented in the appeal briefs filed after the 27.26 denial (Ex. –H– & H2–), and to consider same as if fully stated herein." Brief at 10. Petitioner's ineffective assistance claim alleged in paragraph 5b of his petition in this Court was argued on pages 21 to 25 of petitioner's Rule 27.26 appellate brief (Exh. H–1) under separate headings entitled "Failure to Properly Question Judith Dee Ernest" and "Failure to Properly Question Donna Morrow and Failure to Call up for Disposition Appellant's Motion to Strike Her Testimony as being the Product of Improper Suggestiveness." Petitioner's Rule 27.26 reply brief (Exh. H–2) responded to the arguments presented in the respondent's brief (Exh. I) on those points.[11]

### (1) Witness Ernest

The Missouri Court of Appeals, Western District, accurately stated that petitioner "asserts that trial defense counsel was ineffective for not cross-examining a state's witness, Dee Ernest, who was the pharmacist at the drug store where movant attempted to secure a controlled substance by using a fraudulent prescription." Exh. J at 9. The basic thrust of petitioner's argument in his Rule 27.26 appellant's brief in regard to witness Ernest was that defense counsel, by his failure to cross-examine that witness, failed to have made "clear to the jury that Ms. Ernest could not identify Dr. Domann's signature." Exh. H–1 at 21.

The Rule 27.26 appellate court accurately summarized witness Ernest's testimony at trial by stating that:

On her direct testimony [at trial], Witness Ernest positively identified movant. She had talked with movant about the prescription before calling the police. She testified that the signature of one Dr. Domann was, in fact, not the signature of Dr. Domann.

Exh. J at 9.

That court also reliably found that "Ernest testified at the 27.26 hearing and stated at the time of the criminal trial, she could identify Dr. Domann's signature." *Id.* at 10. That finding reflects the Rule 27.26 appellate court's express rejection of the factual argument made by petitioner on appeal and reiterated in this Court. We find and conclude that the Missouri Court of Appeals properly rejected petitioner's factual argument that had witness Ernest been subjected to cross-examination, she "could not have identified Domann's signature." Exh. J at 10.

In his brief filed in this Court, petitioner cited and relied on pages 249–50 of the Rule 27.26 transcript to support a factual argument that witness Ernest "admitted that she could not identify [Dr. Domann's] signature." Brief at 9. The record does not support that argument. The following appears on pages 249–50 of the Rule 27.26 transcript (Exh. G) in connection with witness Ernest's testimony:

Q. That is fine—did you testify at the trial, ma'am, that you could identify Dr. Domann's signature?

A. Yes, I did.

Q. Do you think that you could still can, ma'am?

A. I seriously doubt it.

Petitioner then handed witness Ernest a number of the trial exhibits and the following appears in that transcript:

**11.** Respondent's brief cited and relied solely on *Porter v. State,* 682 S.W.2d 16 (Mo.App.1984), to support the trial court's rejection of petitioner's claim. Petitioner's Rule 27.26 reply brief argued that his claims could not properly be hidden "under the umbrella of 'trial strategy'" and argued that the applicable standard was stated in *Strickland.* (Exh. H–2 at 45). While we agree with petitioner's view of *Porter's* "trial strategy" rule (*see* our discussion of *Porter* in *Kern v. Armontrout,* 662 F.Supp. 825, 829 (W.D. Mo.1987)), we are satisfied that petitioner has failed to carry the burden imposed by *Strickland*'s standard.

Q. I will ask you to take all the time that you need and look at number one and would you tell me if, in your opinion, that is Dr. Domann's signature or if that is a forgery?

A. I will tell you right now, it has been six years ago—Dr. Domann is now dead—I have not seen his signature in all of the time. I have seen thousands of signatures. I cannot identify it, not without guessing and I wouldn't guess *because I did not guess six years ago.*

*Id.* at 249–250. (Emphasis added).

We find and conclude that the Rule 27.26 appellate court accurately stated that petitioner's factual argument was "based upon movant's incorrect understanding of the evidence given by Ernest." Exh. J at 10. The fact that Ernest could not identify a forgery of Dr. Domann's signature at the Rule 27.26 hearing conducted in May 1986 does not even tend to establish that she would have so testified on cross-examination at a trial conducted in May 1981.

The Rule 27.26 appellate court made the following additional reliable findings of fact in regard to witness Ernest:

At the Rule 27.26 hearing, trial defense counsel explained his decision not to cross-examine Ernest relative to her claim of forgery as to Dr. Domann's signature. Trial defense counsel knew Ernest and stated that she was a person who would not change or be persuaded to change her testimony. Counsel did not wish to draw further attention or to emphasize her testimony.[12]

Exh. J at 10.

We will discuss the impact of that reliably found finding of fact in subpart B(3), *infra.*

#### (2) Witness Morrow

The Rule 27.26 appellate court accurately stated that petitioner claimed that his counsel was ineffective in that (1) counsel had failed to cross-examine Morrow, and (2) that counsel failed to call up for hearing a motion to suppress Morrow's in-court identification. Exh. J at 11. That court accurately stated that "Morrow did not testify at the Rule 27.26 hearing." *Id.*

Because petitioner adduced no evidence in regard to what Morrow may have, in fact, testified on cross-examination, petitioner's claim necessarily focused on the motion to suppress Morrow's identification that had been earlier filed by Charles Franklin, a retained attorney who withdrew as petitioner's counsel.

After noting that Franklin was a witness at the Rule 27.26 hearing, the Rule 27.26 appellate court accurately summarized Franklin's testimony and that of petitioner's counsel by finding that:

Franklin stated that he filed a pre-trial motion to suppress the identification of movant by Morrow on the basis that her identification was impermissibly suggestive due to her observing movant in handcuffs and in the company of a police officer shortly after movant handed her the forged prescription.

Trial defense counsel stated that his decision not to take up the motion to suppress was based upon movant's not having asserted that he (movant) was not present or that he (movant) had any alibi. Counsel also apprised the hearing court of his understanding of *United States v. Wade,* 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149] (1967), and in his judgment, the facts in movant's case did not bring movant's case within *Wade,* which would warrant proceeding with the suppression motion. Counsel stated that he was of the opinion that such a motion, under the facts and circumstances, would have been frivolous.

Exh. J at 12.

The Rule 27.26 appellate court made a further finding that at the Rule 27.26 hear-

---

**12.** The Rule 27.26 appellate court also rejected an additional argument presented by petitioner in page 22 of his Rule 27.26 appellant's brief by stating that: "Movant's further assertion that Ernest did not see him hand the forged prescription to one Donna Morrow (an assistant to Er- nest) is of no importance relative to his claim of ineffectiveness of counsel, particularly in light of the evidence which revealed that movant handed the forged prescription to Morrow, who in turn handed it to Ernest." Exh. J at 11.

ing the petitioner "presented nothing to establish that his identification by Morrow was impermissibly suggestive." *Id.*

Petitioner cited pages 127 and 120–21 of the Rule 27.26 transcript in his Rule 27.26 appellant's brief to support his factual argument that "Bear had reasons to believe that Morrow's in-court identification may not have been proper or correct...." Exh. H–1 at 24. We reject petitioner's reading of that testimony. Page 127 (Exh. G) does not contain any testimony concerning Morrow's in-court identification. Pages 120–21 reflect the reasons why petitioner's counsel did not cross-examine either Ernest or Morrow. The following appears on those pages:

Q. What was the reason that you did not cross examine [Mrs. Dee Ernest and Mrs. Donna Morrow]?

A. I did know both of those women—I had known them quite a long time. I knew that they had identified Doyle Williams. I expected them to identify him at the trial and I knew them well enough that they were not going to change their testimony and were not going to back off of their tesimony [sic]. They were not going to make ay [sic] damaging admissions and I just felt like cross examination would just further emphasize their testimony. I knew them personally and I knew them both to be intelligent people and I just thought, sometimes you refer to that as spotlighting a witness. I thought that would just direct the jury's attention to their testimony even more.[13]

Exh. G at 120–21.

### (3) Application of Legal Standard

 The Rule 27.26 appellate court concluded in regard to his counsel's failure

to cross-examine witnesses Ernest and Morrow that "[o]n his claim of ineffectiveness of counsel, [petitioner] must, by his proof, establish prejudice. *Strickland v. Washington,* 466 U.S. 668, 687 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674] (1984)." Exh. J at 9. We find and conclude that petitioner did not carry the burden of establishing *Strickland*'s first component by showing that his counsel's failure to cross-examine witnesses Ernest and Morrow and his failure to call up the motion to suppress were unreasonable under the factual circumstances reliably found by the Missouri Court of Appeals, Western District. We further find and conclude that petitioner failed to establish *Strickland*'s second component, that petitioner's defense was prejudiced under those factual circumstances.

### (4) Cases Relied on by Petitioner

We have considered the two cases cited by the petitioner in paragraph 5b of his petition, both of which were cited and relied on by petitioner in his Rule 27.26 appellant's brief. *See* Exh. H–1 at 25. Neither case supports petitioner's claim. *United States v. Tucker,* 716 F.2d 576 (9th Cir. 1983), reversed a district court's denial of habeas corpus in a case in which the district court made express findings that defense counsel's performance was, in fact, deficient but that the defendant had not been prejudiced by his attorney's errors and omissions. The Court of Appeals concluded in *Tucker* that prejudice was, in fact, established and that the error was not harmless under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which the Ninth Circuit believed to be applicable.[14]

---

**13.** On page 122, petitioner's counsel added "[t]hey were going to say that was Doyle Williams, they did say it was Doyle Williams and there wasn't any point in emphasizing it." Exh. G at 122.

**14.** *Tucker,* decided before *Strickland,* applied the Ninth Circuit rule stated in *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir.1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). Judge Sneed's opinion con-

curring in result of *Tucker* shows that the Ninth Circuit correctly anticipated the rule the Court later established in *Strickland:* "The en banc court in *Cooper v. Fitzharris* established a two-part inquiry into ineffectiveness of counsel: first, the defendant must show he was denied 'reasonably competent and effective representation,' *id.* at 1327; second, 'where, as here, the claim of ineffective assistance is founded upon specific acts and omissions of defense counsel at trial, the accused must establish that coun-

*McCleskey v. Zant*, 580 F.Supp. 338 (N.D.Ga.1984), *rev'd*, 753 F.2d 877 (11th Cir.1985), *aff'd*, —— U.S. ——, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), does not support petitioner's claim. Indeed, petitioner's ineffective assistance claims were expressly rejected in part XVI of the district court's opinion. *See* 580 F.Supp. at 398–402. The district court's grant of habeas corpus, based solely on due process grounds articulated in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), was reversed by the Eleventh Circuit. The Supreme Court affirmed.

For the reasons stated we find and conclude that petitioner is not entitled to habeas corpus relief on the grounds alleged in part 5b of his petition.

### B.

█ Petitioner alleged as his fourth ground of ineffective assistance of counsel that "[c]ounsel failed to object to the admission of evidence allegedly removed from Movant's car on the grounds that said evidence was the product of an illegal search and seizure. See *U.S. VS. EASTER*, 539 F.2d 663 (8th Cir.1976)." Petitioner's brief in this Court incorporates by reference the arguments presented on this point to the Rule 27.26 appellate court and "moves this Court to consider same as if fully stated herein." Brief at 10.[15]

It is of paramount importance to note that petitioner, in reliance upon *Mapp v.*

*Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), argued in his Rule 27.26 appellate brief that in "view of the fact that there is at least 'a reasonable *possibility* that the evidence complained of might have contributed to the conviction,' the conviction must be reversed."[16] (Emphasis added). Exh. H–1 at 38. It is thus clear that petitioner's argument rests on the premise that petitioner need show only that there was a "reasonable *possibility*" that the admission of the spiral notebook and Mark Matteson's checkbook "might have contributed to the conviction." For that is the only standard suggested by petitioner in his Rule 27.26 appellate brief or in his brief filed in this Court.

The Rule 27.26 appellate court stated generally that "[d]uring his trial, certain evidence was introduced which had been seized from a motor vehicle parked outside the drug store where movant committed this offense" and that "[t]rial defense counsel raised no objection to the introduction of this evidence."[17] Exh. J at 13. That court accepted defense counsel's explanation that "he raised no objection to this evidence on a search and seizure basis because to do so would have tied movant to the vehicle." *Id.* It added, citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976), to support its conclusion, that "[e]ven further,

---

sel's errors prejudiced the defense,' *id.*" 716 F.2d at 596.

**15.** Petitioner's brief in this Court accurately summarized the arguments made in his Rule 27.26 appellant's brief by stating that the warrantless search of the car was not an "inventory search" under the undisputed factual circumstances and that if "this Court finds that the true purpose of the search was in the hope of uncovering evidence and not conduct an inventory of the car, then Movant submitts [sic] that *U.S. VS. JACOBSEN*, 466 U.S. 109, [104 S.Ct. 1652, 80 L.Ed.2d 85] (1984) and *U.S. VS. CHADWICK*, 433 U.S. 1, [97 S.Ct. 2476, 53 L.Ed.2d 538] (1977), controls and Movant was denied effective assistance of counsel when counsel failed and refused to make a proper and timely objection to the illegally seized evidence." Brief at 10.

**16.** The "reasonable possibility" language quoted in petitioner's argument is from *Fahy v. Connecticut*, 375 U.S. at 86–87, 84 S.Ct. at 230.

**17.** The trial transcript shows that Officer Jenkins of the Columbia Police Department seized a checkbook that belonged to Mark Matteson (State trial Exh. 20) and a spiral notebook that had the name "Doyle" on it (State trial Exh. 19) from the car. Exh. A at 152–53. That record shows that trial counsel did object to introduction of the spiral notebook in evidence on the ground that exhibit was "irrelevant and immaterial." *Id.* at 154–57. He did not, however, object to the introduction of Mark Matteson's checkbook. *Id.* at 157.

the record reveals that the search and seizure was not invalid." *Id.* at 14.

Substantial questions may be presented in regard to whether defense counsel's reason for not raising the Fourth Amendment question presented by the search of the car was valid and whether the Rule 27.26 appellate court's reliance on *South Dakota v. Opperman* to sustain the validity of the search and seizure was permissible under the circumstances of this case.[18] Both of those questions, however, are relevant only to *Strickland*'s performance component of an ineffectiveness assistance claim rather than to the prejudice component of such claim.

*Strickland* makes clear that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069. The Court added that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* Indeed, *Strickland* directed that if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

*Strickland* recognized that in order to establish prejudice "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. On the other hand, *Strickland* makes clear that petitioner's argument that a defendant need show only a "reasonable *possibility*

that the evidence complained of might have contributed to conviction" is untenable.

For *Strickland* expressly held that to establish prejudice a "defendant must show that there is a reasonable *probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068. (Emphasis added). A "reasonable probability" was defined as "a probability sufficient to undermine confidence in the outcome." *Id.* The Court added that when "a defendant challenges a conviction, the question is whether there is a reasonable *probability* that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068–89. (Emphasis added). *Strickland* mandated that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury" (*id.*), and that "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696, 104 S.Ct. at 2069.

*Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), establishes that the principles stated in *Strickland* are applicable to Fourth Amendment ineffective claims.[19] That case made clear that the restrictions placed on federal habeas corpus review of Fourth Amendment claims by *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), were not applicable to Sixth Amendment ineffective assistance claims based on deficient representation which related to Fourth Amendment claims.

18. A motion to suppress would have been held outside the presence of the jury and evidence adduced at such a hearing would not have been admissible at trial to tie the petitioner to the car. *See Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 3109, 19 L.Ed.2d 1247 (1968), ("when a defendant testifies in support of a motion to suppress on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial" over his objection.). The Court made clear in *Opperman* that the search of a car impounded for multiple parking violations was reasonable for the reason that the search was not, under the circum-

stances of that case, "a pretext concealing an investigatory police motive." 428 U.S. at 376, 96 S.Ct. at 3100. There was no evidence in this case that the car was searched for a reason similar to that considered in *Opperman*.

19. Although *Kimmelman* was decided long before the respondent's Rule 27.26 brief was filed in the Missouri Court of Appeals, Western District, fairness to that court requires that we state that its attention was not called to that case in respondent's brief.

The District Court in *Kimmelman* rendered its decision granting habeas corpus before *Strickland* was decided. The Court noted that the district court had accordingly applied the ineffective assistance standard of the Third Circuit which required "a two prong inquiry into counsel's competence and into the prejudicial effect of counsel's unprofessional errors." 477 U.S. at —, 106 S.Ct. at 2581, 91 L.Ed.2d at 317.[20] The Court then stated that because "Strickland had recently been decided by this Court, the Court of Appeals reviewed the District Court's determination of ineffective assistance under Strickland's test" and that the "Court of Appeals determined that respondent's trial counsel had been 'grossly ineffective.'" *Id.*

The Court held that *Strickland*'s standards were to be applied in Sixth Amendment ineffective assistance cases founded on incompetent representation with respect to a Fourth Amendment issue and that under that standard in such a case "the defendant must prove both incompetence and prejudice." *Id.* at —, 106 S.Ct. at 2586, 91 L.Ed.2d at 323.

Specifically, the Court concluded that in "order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, *Strickland*, 466 U.S. at 688 [104 S.Ct. at 2065], and that there exists a reasonable *probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at —, 106 S.Ct. at 2583, 91 L.Ed.2d at 319. (Emphasis added). The Court explained that:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectivenss, the defendant must also prove that his Fourth Amendment claim is meritorious *and* that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. Thus, while respondent's

defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, *the two claims have separate identities and reflect different constitutional values.*

*Id.* (Emphasis added).

■ *Kimmelman* thus establishes that *Strickland*'s standard is applicable to the fourth ground of petitioner's ineffective assistance claim and that the burden rests upon petitioner to establish that there was a reasonable *probability* that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. We are satisfied that petitioner did not carry that burden.

The most that petitioner could have obtained, either by way of objection or by way of a successful motion to suppress would have been the exclusion of the spiral notebook and Mark Matteson's checkbook. The exclusion of that evidence would not have had any impact on the sufficiency of the evidence to support petitioner's conviction; there was ample evidence to support the conviction without that evidence.

We find and conclude that there is not a reasonable probability that the jury would have rendered a different verdict if the notebook and Mark Matteson's checkbook had been excluded from evidence. We cannot say that the admission of that evidence was sufficient to undermine confidence in the outcome of petitioner's case.

Nor can we find that there is a reasonable probability that the jury would have had a reasonable doubt respecting petitioner's guilt had the evidence been excluded. For the totality of the evidence adduced at trial must be considered in determining that question.

The Missouri Court of Appeals, Western District, reliably found on direct appeal, 678 S.W.2d at 432, that:

> Dee Ernest testified that she is a registered pharmacist, employed at the Gem

---

20. The Supreme Court noted in *Kimmelman* that the district court used a "customary skill and knowledge which normally prevails at the time and place" standard to measure the first prong of the Third Circuit rule sustaining petitioner's habeas corpus claim. *Id.* 477 U.S. at —, 106 S.Ct. at 2581, 91 L.Ed.2d at 317. The second prong of the Third Circuit rule, however, required application of a "'harmless-beyond-a-reasonable doubt' standard." *Id.*

Drug Store in Columbia, Missouri. At about 10:30 a.m. on April 26, 1980, she received a telephone call from someone who stated that they were calling from the office of Dr. Domann, and that they were sending a prescription for 100 Dilaudid pills in the name of Mark Matteson.... At about 5:30 p.m., a person identified in court as appellant came into the Gem store and handed Donna Morrow a prescription purportedly from Dr. Domann's office and signed by him for one Mark Matteson. Donna called Dee and gave her the prescription. Dee took down appellant's address, looked over the prescription, and told him that it might take a little bit of time because the computer was new. Appellant asked Dee if he was in the right drugstore, and if someone had called concerning this prescription for his uncle, Mark Matteson. Dee excused herself and went into the back office where she called the police, who arrived a few minutes later.

The Missouri Court of Appeals, Western District, did state in its summary of all the evidence that "Officer Richard Jenkins found a car on the parking lot where Gem Drugstore is located, and therein found a checkbook bearing the name of Mark Matteson, and a notebook bearing the name of Doyle." *Id.* It added, however, that "Mark Matteson testified that the checkbook found by Jenkins was his, and that he had lost or misplaced it." *Id.* That court reliably found that Mark Matteson testified at trial that he "was not related to appellant and did not get the prescription." *Id.* In completing its summary of all the evidence adduced at trial, the court added there "was evidence that the signature on the prescription form presented by appellant to Gem was not that of Dr. Domann. *Id.*

The most that can be said about the admission of the checkbook is that the jury may have considered that the person who wrote the forged prescription took the name of Mark Matteson off that check-

book. The fact that the notebook with the name "Doyle" was found in the same car where the checkbook was found could be said to support an inference that the petitioner had access to the checkbook. The issue to be decided by the jury in the case, however, was not whether Mark Matteson's name had been forged.

The question of fact for the jury was whether the signature on the prescription was that of Dr. Domann. We are satisfied from our consideration of the totality of the evidence that the petitioner failed to carry the burden of showing that it was reasonably likely that the verdict of guilty returned by the jury would have been different had the notebook and the checkbook been excluded from evidence.[21]

For the reasons stated, we find and conclude that petitioner is not entitled to habeas corpus relief under the ground alleged in paragraph 5c of his petition.

### C.

█ Petitioner alleged in paragraph 5d of his petition that "[c]ounsel failed to conduct a reasonable investigation and failed to present the testimony of Betty Williams and Edward Dunham. Said witnesses had favorable testimony to Movant's trial position. See *McQUEEN VS. SWENSON,* 498 F.2d 2097 [207] (8th Cir.1974)." On page 11 of his brief in this Court petitioner requested that the arguments and authorities stated in petitioner's Rule 27.26 appellant's brief be considered by this Court in support of that claim.

Petitioner argued in that brief that "the State's witnesses were far from positive (when properly questioned) as to whether it was Appellant or the other man (Morgan) who passed the alleged forged prescription." Exh. H–1 at 29. Petitioner also argued that the Rule 27.26 "testimony of Betty Williams (Tr. 161–180) and Edward Dunham (Tr. 73–78) are clearly in support of Appellant's trial position, that being that

---

**21.** Petitioner cited *United States v. Easter,* 539 F.2d 663 (8th Cir.1976), in paragraph 5c of petition to support the claim made in that paragraph of his petition. We have considered *East-*

*er* and conclude that the factual circumstances of that case are clearly distinguishable from those presented in this case.

Appellant did not pass the alleged forged prescription, and that the prescription may not in fact be a forged document." [22] *Id.* at 28.

The Missouri Court of Appeals, Western District, accurately summarized the testimony of Edward Dunham and Betty Williams at the Rule 27.26 hearing as follows:

> Dunham testified at the Rule 27.26 hearing and it was disclosed that he was not even in the pharmacy when the forged prescription was tendered. There also is no evidence that Dunham could identify the signature of Dr. Domann. The record also reveals that Coleman (Williams) was outside the pharmacy and there was no evidence she could attest to the doctor's signature. The point is that these two alleged witnesses had nothing to offer regarding the tender of the forged prescription.

Exh. J at 16.

Our review of the record establishes that those findings of fact made by the Missouri Court of Appeals, Western District, were reliably found and are fully supported by the record. Application of *Strickland*'s standard requires that we conclude that petitioner was not in any way prejudiced by defense counsel's failure to present the irrelevant testimony of Edward Dunham and Betty Williams as witnesses at the trial.

Petitioner's claim of ineffective assistance based on counsel's alleged failure to call those persons as witnesses as alleged in paragraph 5d of his petition is therefore untenable. We so find and conclude.

#### D.

Our determination that petitioner failed to carry the burden of establishing the specific claims of ineffective assistance alleged in paragraphs 5b, 5c, and 5d of petitioner's petition requires that we find and conclude that the performance of defense counsel at trial was not, in fact, "adversely affected" by the "irreconcilable conflict" alleged in paragraph 4 and paragraph 5a of

his petition. It is thus clear that even if it is assumed that the *Cuyler v. Sullivan* conflict of interest standard may be said to be applicable to this case, it must be held that the petitioner has not carried the burden of proof required by that standard. For the petitioner failed to show that "an actual conflict of interest adversely affected his lawyer's performance" at trial. 446 U.S. at 348, 350, 100 S.Ct. at 1718, 1719 (reiterated in *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067). We so find and conclude.

For the reasons stated, it is

ORDERED that the petition for habeas corpus should be and the same is hereby denied.

---

**22.** Petitioner relied on *McQueen v. Swenson*, 498 F.2d 207 (8th Cir.1974), to support his argument that petitioner's "trial position was prejudiced." *Id.* at 29. We conclude that *McQueen* is distinguishable on its facts.