William ELDRIDGE, Appellant,

v.

STATE of Missouri, Respondent.

No. 61320.

Supreme Court of Missouri,
En Banc.

Dec. 6, 1979.

Rehearing Denied Jan. 15, 1980.

George D. Johnson, St. Louis, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Appeal from denial after evidentiary hearing of motion under Rule 27.26 to vacate judgment and sentences entered upon convictions on three counts of robbery, first degree, with a dangerous and deadly weapon.[1] The appeal was transferred from the Court of Appeals, Eastern District, after opinion, to apply the appropriate standard to the charge of ineffective assistance of counsel. Affirmed.

Appellant contends he was denied effective assistance of counsel in that his attorney failed to call certain alibi witnesses, and failed to discover police reports relating to a look-alike who appellant asserts committed the crime.

1. Affirmed in *State v. Eldridge*, 543 S.W.2d 500 (Mo.App.1976).

■ The hearing was accorded August 26, 1977, and the question for the trial court on the charge of ineffective assistance of counsel was whether he received a fair trial.[2] *Sims v. State,* 496 S.W.2d 815 (Mo. 1973). The trial court, in denial of relief, found there was "nothing of value that was not done by defense attorney that he could have done to change the results in this case." Review is limited to whether the findings, conclusions, and judgment of the trial court are clearly erroneous. Rule 27.-26(j); *Crosswhite v. State,* 426 S.W.2d 67 (Mo.1968). For reasons which follow, the trial court findings are not clearly erroneous under the fair trial test of *Sims v. State,* supra, or the customary skill and diligence test of *Seales v. State,* supra.

About 6:30 on the evening of November 15, 1974, two men robbed John's Tavern in St. Louis and some of its patrons of an undetermined amount of cash and went outside. After a minute or two, they returned, locked everyone in the bathrooms and fled. Shortly thereafter, the police were called and two of the victims, Steve Wright and Winston Gates, told police officers they recognized one of the robbers and knew where he lived. They accompanied the officers on a patrol of the neighborhood and, about 7 p. m. when William Eldridge was seen leaving his house, both witnesses identified him as one of the robbers. He was arrested and searched; a chrome-plated ammunition clip and seventeen live .32 caliber bullets were found in his pocket. He was taken to the tavern where he was identified by some of the other patrons. Witnesses to the robbery previously had told police that one of the robbers had worn green and white checked pants with a defective cuff; Eldridge was wearing such pants.

Defendant and three witnesses testified in support of an alibi which the jury rejected.

The following developed at the hearing on the motion.

Several days after defendant's arrest, a man named Willie Price, who bears a strong resemblance to defendant in height and general appearance, was arrested and charged with the same robbery. Later it was discovered that Price and defendant lived a block apart. Defendant said he told his attorney of Price's existence and showed him a newspaper article that contained a photograph of Price with Eldridge's name under it and an account by Winston Gates that he had identified defendant as one of the robbers. Police reports offered at the hearing revealed that Price was also charged with a holdup of John's Tavern November 7, 1974, and several other robberies with *modi operandi* similar to the November 15 robbery and that Gates had picked Price out of a lineup identifying him as one of the November 15 robbers. It was also stated that it had been established at defendant's trial that one of the robbers of John's Tavern on November 15 was approximately six inches shorter than the other to imply that two men of the same height could not have committed the crime together.

Defendant also said he told his attorney of three alibi witnesses, Edgar Taylor, a clerk at a record store who defendant claimed had sold him a record at the time the robbery was committed; Willie Coburn, defendant's cousin, who he said would have testified that he and not defendant was in possession of defendant's pistol at the time of the robbery; and Willie Price, the lookalike who defendant said would have admitted to the robbery and testified that defendant was not with him when he committed it. They were not called at trial.

■ Appellant charges that his attorney should have called Edgar Taylor, the

2. *Seales v. State,* 580 S.W.2d 733 (Mo. banc 1979) adopted the test devised in *Reynolds v. Mabry,* 574 F.2d 978 (8th Cir. 1978), and *Witham v. Mabry,* 596 F.2d 293 (8th Cir. 1979), citing *Thomas v. Wyrick,* 535 F.2d 407 (8th Cir. 1976) cert. denied, 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148, and *McQueen v. Swenson,* 498 F.2d 207 (8th Cir. 1974). Under this test, to prevail on a claim of ineffective assistance of counsel, movant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was prejudiced thereby. Such test was given prospective application to Rule 27.26 hearings held after April 25, 1979.

record store clerk. Appellant's attorney testified at the hearing that his investigator was told by Taylor he did not want to testify and if called to so do, "wouldn't remember anything." If an attorney believes that the testimony of an alibi witness would not unqualifiedly support his client's position, it is a matter of trial strategy not to call him to the stand. *Jackson v. State,* 537 S.W.2d 211 (Mo.App.1976). An assertion against counsel's choice of trial strategy with respect to calling or not calling certain witnesses does not establish ineffective assistance of counsel. *Cheek v. State,* 459 S.W.2d 278 (Mo.1970). Hindsight may question counsel's judgment but it does not establish a basis for finding defendant to have been denied a fair trial. *Cheek v. State,* supra.

■ Appellant charges his attorney should have called Willie Coburn to testify that defendant did not have access to his own gun. His attorney testified that defendant never told him that his gun was at Coburn's house and if he had, he would not have been called as a witness because such testimony would have established defendant's ownership of a pistol. Counsel's duty includes use of witnesses named by defendant who may assist in the defense. *Jones v. State,* 491 S.W.2d 233 (Mo.1973). The trial court properly could have found that defendant never informed his attorney that Coburn had the gun thus imposing upon counsel no duty to interrogate or call him. If defendant did not receive helpful testimony from Coburn, it was by reason of his own failure to tell his attorney that Coburn had the gun.

■ Appellant charges his attorney should have called Willie Price, the look-alike. The record shows that counsel was aware of Price and that he had been charged with the same robbery. Trial counsel's position was that Price on the stand would damage his client's case. Price told counsel's investigator he would claim his 5th Amendment protection and refuse to testify. The trial court properly could have found that defendant was not denied effective assistance of counsel by the attor-

ney's choice not to call a witness who was charged in the same robbery and who had stated he would invoke his right to silence. *Jackson v. State,* supra; *Cheek v. State,* supra.

Appellant charges his attorney improperly failed to discover police reports pertaining to Price. These reports indicated Price had been involved in other robberies with a cohort several inches shorter then he. This description matched the one that came out at trial of the November 15 robbery perpetrators. Appellant argues that since his attorney was aware of Price's existence, that he was similar in appearance, especially in height, and that the perpetrators of the November 15 robbery were not the same height, his attorney should have concluded that Eldridge and Price could not possibly have been accomplices. This, appellant argues, imposed upon counsel the duty to discover the police reports of other crimes with which Price had been charged which, if admitted into evidence at trial, might have raised reasonable doubt of defendant's presence at the holdup. He also argues that had it been established at trial that Price had been picked from a lineup as one of the robbers and that Price and Eldridge lived only a block apart, more doubt would have arisen.

Counsel's answer to these assertions was that before trial he had no reason to doubt that his client and Price, both charged, had been accomplices. The height disparity between the robbers did not surface until the suppression hearing immediately preceding the trial. Believing that his client and Price had committed the crime together, the last thing he wanted was additional police reports implicating his client's accomplice in other crimes.

■ This explanation is supported in the record. Hindsight might suggest a duty of counsel to seek out police reports about Price had he known that his client and Price could not possibly have acted together, but he had nothing upon which to base such a belief. The police report of the November 15 robbery, which counsel did have, does not reveal the relative heights of

the robbers; nor would anything defendant told his counsel have led another attorney to further investigation of reports on Price. Believing that Price and Eldridge acted together, counsel properly was found by the court to have breached no duty in the asserted failure to seek police reports on Price.

Accordingly, the judgment is affirmed.

All concur.