ENTERED this 12th day of December, 1988.

Robert C. MOUNTJOY, Petitioner,

v.

Jim JONES, Respondent.

No. 88–0498–CV–W–8–JWO–P.

United States District Court, W.D. Missouri, W.D.

March 21, 1989.

Robert C. Mountjoy, Farmington, Mo., pro se.

Stephen Hawke, Missouri Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER DENYING PETITION FOR HABEAS CORPUS

JOHN W. OLIVER, Senior District Judge.

### I

This State prisoner habeas corpus case pends in this division of this Court after transfer from the Honorable Joseph E. Stevens, Jr., on March 1, 1989. The initial order to show cause accurately stated that in the lengthy attachments to his *pro se* petition, the petitioner challenges his 1988 conviction for second-degree robbery and the twelve-year sentence pursuant thereto imposed by the Circuit Court of Jackson County, Missouri on three alleged ineffective assistance grounds and on a fourth ground that petitioner's extradition from Kansas to Missouri was illegal.

In later filings, petitioner made clear that the ineffective assistance grounds on which he relies were stated in a motion filed in the Missouri Court of Appeals, Western District, for rehearing or transfer to the Supreme Court of Missouri. That motion did not include the fourth ground based on the alleged illegality of his extradition from Kansas to Missouri. That ground need not be discussed in any detail for the reason it is obviously without merit. *See Frisbie v. Collins,* 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952).

The respondent concedes that petitioner has exhausted his available State court postconviction remedies. We find and conclude that none of the grounds relied on are tenable and that the petition should be denied for reasons we will state.

### II

#### A.

Petitioner's conviction was affirmed on direct appeal pursuant to Missouri Rule 30.25(b) in *Missouri v. Mountjoy,* 680 S.W. 2d 178 (Mo.App.1984). Missouri Rule 27.26 relief was denied by the trial court after an

evidentiary hearing. That denial was affirmed by the same appellate court in *Mountjoy v. State,* 750 S.W.2d 471 (Mo. App.1988).

The Missouri Court of Appeals reliably found the following facts were established at the trial:

On March 23, 1982, Kimberly Simmons was working at the Safeway store at 23rd Street and Lee's Summit Road in Independence. At about 1:45 p.m., Miss Simmons was working in the customer service booth when she was approached by a man who told her that she was being robbed and that he was armed with a gun. He ordered her to open the door to the booth. Miss Simmons complied, and a second man entered the booth where he removed approximately $3,500.00 in cash and a total of 102 Republic money orders. The man who first approached Miss Simmons remained outside the booth. She was unable to testify that defendant was that man. Miss Simmons did identify the man who entered the booth as one James Dolan.

Mr. Terry Goodman was in the Safeway store at about this time. He went to the customer service window to obtain reimbursement for some aluminum cans he had brought in for recycling. While waiting near the customer service window, he saw the defendant. The defendant told him, "Just be cool. Nobody is going to get hurt. If you go against me in court I'll kill you and your whole family."

Three days later, Russell Sheldon, a police officer in Olathe, Kansas, was on patrol when he observed an individual stumble while crossing Rodgers Road. After observing this individual attempt to force his way into a house, Officer Sheldon arrested the suspect who was the defendant. When arrested, the defendant was found with ninety-seven money orders which were later shown to be those taken from the Safeway store three days earlier.

Resp's Exh. E at 1–2.

The Missouri Court of Appeals also reliably found that there "was an ample inde-

pendent basis for Mr. Goodman's courtroom identification of Appellant." *Id.* at 5.

We now state the factual circumstances under which petitioner's three alleged ineffective assistance claims arose.

### B.

Petitioner's second amended Rule 27.26 motion alleged as his first ground for post-conviction relief that his trial counsel "was ineffective in that he ... failed to investigate ... the possible defense of alibi." Resp's Exh. F at 34.

The factual circumstances under which that claim is based was alluded to by the Missouri Court of Appeals on direct appeal in connection with petitioner's argument that "the trial court erred in failing to grant a mistrial when the prosecutor asked Appellant on cross-examination where his wife was at the time of Appellant's arrest." Resp's Exh. E at 7. That court had earlier noted that the petitioner "had provided information against James Dolan" (*id.* at 5) who later entered a plea of guilty to the Safeway store robbery. Because the record established that the trial court had sustained defense counsel's objection to the question, the appellate court affirmed the trial court's denial of the defense motion for a mistrial.[1]

The transcript of the trial (Resp's Exh. A) establishes that petitioner testified on direct examination that he had "provided information against James Dolan" before he was arrested. That testimony was given in explanation of how he happened to have possession of the money orders taken from the Safeway store three days after the robbery. He testified that James Dolan, with whom petitioner became acquainted when they both were serving earlier terms in the Missouri penitentiary, gave him the money orders that petitioner had in his possession shortly before he was arrested in Olathe, Kansas. Tr. 309. Petitioner testified that the "main reason" for that gift was that "he was asking me if I would rob a bank with him." *Id.*

Petitioner also testified on direct examination that before he was arrested he had advised Special Agent Thomas Moore of the FBI that when Dolan gave him the money orders, Dolan told him that he had robbed the Safeway store. Tr. 311–12.[2] Petitioner further testified on direct examination that he thereafter gave Detective Bosch the same information. Tr. 313.[3]

Petitioner, of course, denied on direct examination that he participated in the robbery of the Safeway store. Tr. 315. Petitioner explained that if he had committed the robbery "[I] don't think I would call the F.B.I. and turn in money orders that I had and told them about that robbery ... I might be silly, but I ain't crazy, you know." *Id.*

The Missouri Court of Appeals, neither on direct appeal nor on Rule 27.26 review, made any findings of fact in regard to the circumstances under which petitioner suggested that Dianna Terry Puhr may have been able to establish an alibi for petitioner. The transcript of the trial, however,

---

1. The Missouri Court of Appeals explained its ruling by stating that the "[t]he discussion between court and counsel [out of the presence of the jury] revealed that the prosecution wished to show that Mrs. Mountjoy was, herself, in jail at the time of Appellant's arrest and that his willingness to provide information about James Dolan's role in a bank robbery was motivated by his desire to secure his wife's release rather than due to notions of civic responsibility. Due to the failure of the prosecution to make certain discovery to the defense, the judge prohibited the prosecution from pursuing this line of inquiry." Resp's Exh. E at 7.

2. FBI Special Agent Thomas Moore was called as a defense witness. He testified that petitioner had indeed contacted him shortly after the Safeway store robbery and that after talking with the petitioner, he called Detective Bosch of the Independence, Missouri Police Department. Tr. 412. Moore also testified that, in his opinion, petitioner was "intoxicated" at the time petitioner talked with him. Tr. 413.

3. Detective Bosch, also called as a defense witness, testified that he talked with petitioner on March 26, 1982 (Tr. 383), three days after the robbery, when petitioner was in the Olathe, Kansas jail; that petitioner told him that he "got [the money orders] from Mr. Dolan"; that petitioner "said that Mr. Dolan told him that they had been stolen in a Safeway robbery" (Tr. 386); and that "Mr. Dolan admitted to Mountjoy that he, Dolan, did the robbery." Tr. 399.

establishes that the prosecutor asked petitioner on cross-examination: "Where were you on March 23rd at 1:50 in the afternoon"? Defense counsel, out of the hearing of the jury, made the following objection:

MR. ROGERS: Objection, beyond the scope of direct examination of the defendant. *We haven't noticed up any defense of alibi and don't intend to present one.* (Emphasis added).

Tr. 373.

Petitioner testified as follows on cross-examination after that objection was overruled:

Q. (By Mr. Hall) Where were you on March 23rd at 1:50 in the afternoon?

A. I was probably in Kansas, which—I probably was in Olathe, Kansas, at that time.

Q. With who?

. . . .

A. Well, for one, I was at a Diane Terry's house, 1100 something South Payne, okay, and I was in a bar that evening at. . . .

Q. Who is Diane Terry?

A. It's just a person that I know.

Q. Good friends with Miss Terry?

A. A friend.

Tr. 374.

After the prosecutor cross-examined petitioner in regard to how long petitioner had known Diane Terry, petitioner testified as follows:

Q. Is it your testimony that you were with Miss Terry at the time this robbery occurred?

A. Oh, I do not know that.[4]

Tr. 377.

Petitioner also testified that he had not talked with Miss Terry "since I was in the Olathe County Jail" (Tr. 377) and that he only talked with her then when she came to

visit another inmate at the jail. Tr. 378. Petitioner left that jail on July 19, 1982. Tr. 379. He reiterated on redirect examination that he had not "heard from Diane Terry" after he left the Olathe jail. Tr. 379.

### C.

The Rule 27.26 trial court made the following findings of fact in regard to petitioner's first ineffective assistance claim:

> Movant's attorney read into the record a deposition taken of Frances Dianna Puhr, a Kansas resident. The movant made the offering to support movant's alibi claim as alleged in his second amended motion at paragraph 9(a)(1).
>
> . . . .
>
> Mr. Rogers testified that an investigator was sent to interview the state's alibi witness, Dianna Terry a/k/a Frances Dianna Puhr. Mr. Rogers testified from memory that prior to movant's trial, Dianna Terry was unwilling to be involved in movant's defense. Mr. Rogers further testified that Dianna Terry could only testify that the movant was with Ms. Terry for only part and not all of the day which the robbery took place for which the movant was convicted.

Resp's Exh. F at 55 and 56.

The Rule 27.26 trial court stated as a conclusion of law that "the State effectively discredited the movant's claims of ineffective assistance of counsel through the testimony of Mr. Charles Rogers." *Id.* at 60.[5]

### D.

Petitioner alleged in paragraph 9(a)(4) of his second amended Rule 27.26 motion as his second ground for relief that his trial counsel "was ineffective in that he . . . [f]ailed to call to testify Mrs. Terry Good-

---

**4.** On redirect examination, petitioner testified as follows:

"Q. The question is, do you have any idea what time it was when you left her house to go to the bar? A. No, I just ran all over that particular day. I don't know what time to tell. . . . Q. Was there somebody with you every minute of that day? A. No, not hardly." Tr. 381.

**5.** The statement of that conclusion could be said to reflect an implicit rejection of the deposition testimony of Frances Dianna (Terry) Puhr. Neither the Rule 27.26 trial court nor the appellate court, however, made any express finding in that regard.

**1544**

man, an eye witness to the robbery, who could not identify movant." Resp's Exh. F at 54. The Rule 27.26 trial court made a finding of fact that "the reason for not calling Mrs. Terry Goodman was trial strategy, in that Mrs. Goodman's inability to identify the movant was of no strategic help to movant's defense." *Id.* at 57.

The Missouri Court of Appeals made a more appropriate statement that petitioner's trial counsel testified that he "chose not to consider Mrs. Goodman as a witness, although she had failed to identify Mr. Mountjoy as the robber as her husband had done" for the reason that he "feared that calling her ran the risk that in the courtroom, an inherently suggestive atmosphere, she might think that she recognized defendant, thus 'backfiring' on defendant." 750 S.W.2d at 473.[6]

### E.

Petitioner in paragraph 9(a)(12) of his second amended Rule 27.26 motion alleged as his third ground for relief that his trial counsel "was ineffective in that he ... [f]ailed to interview Officer Bosch prior to calling him as an eye witness." Resp's Exh. F at 55. The Rule 27.26 trial court reliably found that "Det. Bosch was interviewed at least twice prior to the movant's trial." *Id.* at 59.

### III

### A.

Examination of the transcript of the trial and of the transcript of the Rule 27.26

evidentiary hearing supports a finding and conclusion that the Rule 27.26 trial and appellate courts reliably found the facts thus far stated in this memorandum opinion.

The question of whether the Missouri courts appropriately articulated and thereafter properly applied the controlling federal constitutional ineffective assistance standard presents a much more complicated problem. For neither the Rule 27.26 trial or appellate courts cited any federal case in their respective decisions denying petitioner's postconviction motion. Nor did either of those courts suggest that they were applying the controlling federal ineffective assistance standard.

In fairness to the Missouri Court of Appeals, Western District, it must be noted that the arguments made in the respondent's brief were based on twenty-eight cases decided by one of Missouri's Courts of Appeal. Indeed, that brief did not even cite the leading Supreme Court of Missouri ineffective assistance case of *Seales v. State*, 580 S.W.2d 733 (Mo.1979) (en banc), in which that court rejected Missouri's "farce and mockery" rule and expressly adopted the federal constitutional ineffective assistance standard.[7]

This case is an excellent example of unnecessary difficulty caused by the Attorney General's consistent refusal to give the Missouri appellate courts the benefit of citation and discussion of the Supreme Court of the United States cases that articulate and apply the controlling federal con-

**6.** As will be later noted, the Rule 27.26 appellate court did not apply the controlling federal ineffective assistance standard to that statement. Rather, that court applied the State "trial strategy" rule in affirming the trial court's denial of Rule 27.26 relief.

**7.** The Supreme Court of Missouri appropriately stated in *Seales* that "[i]t is not at all desirable that there be one standard applied in the state courts when adjudicating questions of effectiveness of counsel under our postconviction relief proceedings as provided in rule 27.26 and a different standard applied when the same prisoner appears in a federal court within the Eighth Circuit seeking habeas corpus relief for

allegedly ineffectiveness of counsel in his state court criminal trial." 580 S.W.2d at 736. *Seales* added that "we believe it is of substantial importance that the trial and appellate courts of this state and the trial and appellate courts in the federal system of the Eighth Circuit be applying the same standard and in the same way. To this end the court adopts the holdings of *Reynolds v. Mabry, supra* [574 F.2d 978 (8th Cir. 1978) ], and *Witham v. Mabry, supra* [596 F.2d 293 (8th Cir.1979) ], with reference to the standard and the manner of its application for determining the question of whether a defendant is entitled to a new trial because of ineffective assistance of counsel." 580 S.W.2d at 736–37.

stitutional standard.[8] For the Rule 27.26 appellate court in this case cited and apparently relied on *State v. Turner*, 623 S.W.2d 4, 12 (Mo.1981) (en banc), in its denial of postconviction relief. *See* 750 S.W.2d at 473.

*Turner* articulated and applied the State "trial strategy" rule, rather than the applicable federal ineffective assistance standard when it affirmed the Rule 27.26 trial court's denial of postconviction relief. For the Supreme Court of Missouri in *Turner* quoted with approval the following language from *Eldridge v. State*, 592 S.W.2d 738, 741 (Mo.1979) (en banc): "If an attorney believes that the testimony of an alibi witness would not unqualifiedly support his client's position, *it is a matter of trial strategy* not to call him to the stand.... An assertion against *counsel's choice of trial strategy* with respect to calling or not calling certain witnesses does not establish ineffective assistance of counsel." *See Turner*, 623 S.W.2d at 12. (Emphasis added).

The notion that the question of whether an alibi witness should be called may properly be labeled as a "matter of trial strategy" and the notion that "counsel's choice of trial strategy" cannot be said to "establish ineffective assistance of counsel" was rejected by the Court of Appeals for the Eighth Circuit when it reversed the Eastern District of Missouri's denial of Eldridge's petition for federal habeas corpus. The Eastern District's decision followed on

the heels of the Supreme Court of Missouri's affirmance of the State trial court's denial of Rule 27.26 relief in that case. *See Eldridge v. Atkins*, 665 F.2d 228 (8th Cir. 1981), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982).

In *Kern v. Armontrout*, 662 F.Supp. 825 (W.D.Mo.1987), this Court discussed at length the conflict between the Missouri "trial strategy" rule and the controlling federal standard articulated and applied by the Eighth Circuit in *Eldridge v. Atkins*.[9]

For the reasons that we stated in detail in part III of *Kern* (*id.* at 829–32), we concluded that:

> The Court of Appeals for the Eighth Circuit has recognized that a determinative application of a State court "trial strategy" rule that voids appropriate Sixth Amendment factual analysis is not a constitutionally permissible rule. Recognition of the constitutional validity of such a rule would imply that the failure of defense counsel to call defense witnesses whose testimony would establish an ironclad alibi for the defendant must be considered a matter of "trial strategy" and therefore within the unreviewable discretion of defense counsel.

That conclusion was based on the Eighth Circuit's opinion in *Eldridge v. Atkins* and its more recent opinion in *Kellogg v. Scurr*, 741 F.2d 1099 (8th Cir.1984), and on our detailed analysis of *Strickland v. Washington*.[10]

---

**8.** We commented on the consistent practice of the present Attorney General of Missouri in *Mitchell v. Dowd*, 688 F.Supp. 1392, 1394 n. 4 (W.D.Mo.1988), stating that our required review of the briefs by the Attorney General in the State appellate courts on direct and Rule 27.26 appeals "show[s] that the Attorney General consistently fails to give the Missouri appellate courts the benefit of the citation and discussion of the familiar cases decided by the Supreme Court of the United States in which the controlling federal constitutional standards are stated and applied. It cannot be that the Attorney General does not know about the United States Supreme Court cases. For in a typical State prisoner habeas corpus case, as in this case, the Attorney General cites and discusses the controlling United States Supreme Court cases in the responses filed to the show cause orders entered by this Court."

**9.** *See Kern*, 662 F.Supp. at 830 n. 7, where we stated: "The Supreme Court of Missouri in *Eldridge v. State*, 592 S.W.2d 738, 741 (Mo.1979) (en banc) stated the Missouri 'trial strategy' rule in substantially the same manner as the Missouri Court of Appeals stated that rule in this case...." *See also* the Missouri Court of Appeals cases cited in footnote 4 of *Kern*, (*id.* at 829) in which we cited eight other Missouri Court of Appeals cases that have articulated and applied the Missouri "trial stragegy" rule rather than the federal constitutional standard.

**10.** We also directed attention in part III of *Kern* to our 1976 opinion in *Garton v. Swenson*, 417 F.Supp. 697 (W.D.Mo.1976), noting that the Supreme Court of Missouri had cited that case with approval in its landmark opinion in *Seales* (*see* 580 S.W.2d at 736) in which it abandoned the old Missouri "farce and mockery" rule in

### B.

This is the fifth recent State prisoner ineffective assistance case in which we have been required to focus attention on the fact that application of the Missouri "trial strategy" rule does not comply with the applicable Sixth Amendment standard mandated by *Strickland* and the progeny of that case. In addition to *Kern, see* the published opinions in *Tatum v. Armontrout*, 669 F.Supp. 1496 (W.D.Mo.1987), and *Williams v. Armontrout*, 673 F.Supp. 366 (W.D.Mo.1987).[11]

In *Tatum* we stated that although the "Missouri Court of Appeals, Western District, recognized the existence of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and the leading Missouri case of *Seales v. State*, 580 S.W.2d 733 (Mo.1979) (en banc) ... it nevertheless affirmed the Rule 27.26 trial court's conclusion of law under a state 'trial strategy' rule rather than by application of the controlling federal standard articulated in *Strickland* and in *Seales*." 669 F.Supp. at 1503.[12] We were thus forced to state in *Tatum* that it was "therefore impossible for this Court to conclude that the state courts properly applied the controlling federal constitutional standard to the factual circumstances of this case." *Id.* at 1504.

In *Williams* we noted that the Attorney General's brief in the Rule 27.26 appellate court had cited only *Porter v. State*, 682 S.W.2d 16 (Mo.App.1984), one of the numerous Missouri Court of Appeals cases that articulated the State "trial strategy" rule, in support of the Rule 27.26 court's denial of postconviction relief. 673 F.Supp. at 373 n. 11. We further noted that petitioner's "Rule 27.26 reply brief argued that his claims could not properly be hidden 'under the umbrella of "trial strategy"'' and argued that the applicable standard was that stated in *Strickland.*" *Id.* We concluded that although "we agree with petitioner's view of *Porter*'s 'trial strategy' rule (*see* our discussion of *Porter* in *Kern v. Armontrout*, 662 F.Supp. 825, 829 (W.D.Mo.1987)), we are satisfied that petitioner has failed to carry the burden imposed by *Strickland*'s standard." 673 F.Supp. at 373 n. 11.

Although federal habeas corpus was denied in *Kern, Russell, Tatum, Williams*, and in this case, the failure of the Rule 27.26 trial and appellate courts to properly apply *Strickland*'s standard in those cases required this Court to make a detailed independent examination of the transcript of the State court trial, the transcript of the Rule 27.26 evidentiary hearing, and of the appellate brief filed by the parties on direct and Rule 27.26 appeals. The failure of Rule 27.26 trial courts to properly develop the relevant factual circumstances and the failure of the Rule 27.26 appellate courts to

---

favor of the applicable standard. We noted in footnote 6 of *Kern* (*id.* at 830) that "[i]f the 'trial strategy' rule applied by the State trial and appellate courts in this case had been applied in *Garton*, petitioner's habeas corpus petition in that case would have been denied rather than granted." And in footnote 5 (*id.* at 829–30), we concluded that "[b]oth the application of the now abandoned 'farce and mockery' rule and the more recent development of the 'trial strategy' rule permit ineffective assistance of counsel cases to be swept under the judicial rug without the necessary factual analysis required by the applicable federal standard. It is our view that the result-oriented application of either rule does not comply with the mandate of the Sixth Amendment."

**11.** The fifth case was *Russell v. Jones*, No. 87–0162–CV–W–1, 1987 WL 54373 (June 17, 1987). We noted in our unpublished opinion in that case that the Rule 27.26 appellate court in *Rus-*

*sell,* as did the Rule 27.26 appellate court in this case, cited and relied on *State v. Turner*. In *Russell* we noted that *State v. Turner* applied the "trial strategy" rule which it quoted from the Supreme Court of Missouri's opinion in *Eldridge v. State*. We added that it was not necessary that we discuss *Eldridge* and the constitutional impermissible application of Missouri's "trial strategy" rule in any further detail for the reason that "we recently fully discussed both that case and Missouri's rule in *Kern v. Armontrout*, 662 F.Supp. 825 (W.D.Mo.1987)."

**12.** The Missouri Court of Appeals' opinions relied on by the Rule 27.26 appellate court in *Tatum* were *Williamson v. State*, 628 S.W.2d 895 (Mo.App.1981); *Cage v. State*, 573 S.W.2d 73 (Mo.App.1978), and *Cole v. State*, 573 S.W.2d 397 (Mo.App.1978). All three of those Missouri Court of Appeals' opinions were decided before the Supreme Court of the United States decided *Strickland* in 1984.

apply the *Strickland* standard rather than the State "trial strategy" standard is obviously related to the fact that the positions maintained by the prosecuting attorneys in the Rule 27.26 trial courts and by the Attorney General in the briefs filed on behalf of the respondent in the Rule 27.26 appellate courts.

Those positions and briefs are necessarily based on the untenable theory that the State "trial strategy" rule somehow relieves the State courts of discharging the duty mandated by the Supremacy Clause of the Constitution to apply the federal constitutional standard articulated in *Strickland* in ineffective assistance cases.

When the Supreme Court of Missouri expressly rejected Missouri's earlier "farce and mockery" rule in *Seales,* it expressly directed that the "new test adopted in this opinion" should be followed in all the "trial and appellate courts of this state ... after April 25, 1979." 580 S.W.2d at 737. The "new test" adopted in *Seales* was the federal ineffective assistance constitutional standard; the Supreme Court of Missouri in no way suggested that a State "trial strategy" test was to be substituted for the old "farce and mockery" rule expressly rejected in that case. An application of a State "trial strategy" rule in an ineffective assistance case is as constitutionally impermissible as an application of a State "farce and mockery" rule.

### C.

The juridical problem created by the positions maintained by prosecuting attorneys throughout the State and by the Attorney General in the briefs filed in the various Missouri Courts of Appeal in support of a State "trial strategy" rule is much more complicated than the imposition of an unnecessarily added judicial burden on the federal trial and appellate courts. Those positions create a practical situation under which prosecuting attorneys labor under the erroneous idea that all acts and omissions of defense counsel somehow become automatically immune from a federal constitutional ineffective assistance attack if the State simply adduces the testimony of

defense counsel that a particular act or a particular omission to act was part of defense counsel's "trial strategy." Thus, many of the transcripts of the Rule 27.26 evidentiary hearings that a federal court is required to review in federal habeas corpus cases contain very little, if any, inquiry that is focused directly on the reasons why defense counsel elected to take particular action or why he refused to pursue a particular cause of action at trial.

In this case, for example, the prosecutor asked defense counsel the following question at the Rule 27.26 hearing: "Would you please tell the Court what your trial strategy was [when] you failed to call Mrs. Terry Goodman to testify on behalf of Mr. Mountjoy"? Resp's Exh. G at 71. Although petitioner's defense counsel made a rather lengthy answer to that question the only reference made by the Rule 27.26 trial court to that testimony was its conclusory statement that "Mr. Rogers testified that the reason for not calling Mrs. Terry Goodman was trial strategy, in that Mrs. Goodman's inability to identify the movant was of no strategic help to movant's defense." Resp's Exh. F at 57. The Rule 27.26 trial court apparently entertained the view that its placement of a "trial strategy" label on defense counsel's decision not to call Mrs. Goodman was sufficient to support a denial of that particular ground of petitioner's ineffective assistance claim.

It is also clear that the Rule 27.26 appellate court applied the State "trial strategy" rule rather than the applicable federal standard. For that court simply reiterated that defense counsel "testified that he did not call Mrs. Terry Goodman to testify at trial as a matter of trial strategy." 750 S.W.2d at 473. That court did not make any inquiry as to whether defense counsel's decision did or did not fall below an objective standard of reasonableness as mandated by *Strickland.* Rather, that court reverted to the result-oriented State "trial strategy" rule and concluded that an "attorney's selection of witnesses to be produced at trial is a matter of trial strategy," citing *Pin-*

## 1548

*kard v. State,* 694 S.W.2d 761, 762 (Mo. App.1985).[13]

The bottom line of our detailed discussion of the State "trial strategy" ineffective assistance rule in *Kern, Russell, Tatum, Williams,* and in this case is to once again focus attention on the established principles of comity that have been established to avoid unnecessary friction between the State and federal judicial systems. Those principles require a federal court to accept the findings of facts reliably made by a State court and to give appropriate deference to a State court's determination of federal constitutional questions. Those cardinal principles are consistently applied by federal courts in the discharge of their duties in State prisoner habeas corpus cases.

Those principles are based on the basic assumption that a State court's determination of a federal constitutional question will properly articulate the applicable federal constitutional standard and that the federal standard rather than a State standard, will be properly applied to the factual circumstances reliably found. Difficulties will continue to arise in ineffective assistance cases when counsel for the State continue to present arguments to the State trial and appellate courts that they should apply a State rather than a federal standard in their determination of a Sixth Amendment ineffective assistance case. When the Attorney General is called upon to represent the respondent in the federal habeas corpus proceeding that is almost inevitably filed by a State prisoner serving a lengthy sentence,[14] he must necessarily shift ground and attempt to rely on federal rather than State cases. That shift is sometimes quite difficult, and sometimes confusing, for the reason the prosecuting attorneys who represent the State in the Rule 27.26 trial court frequently conduct the requisite evidentiary hearing in accordance with the State "trial strategy" rule rather than the applicable federal standard.

Much of the difficulty that plagues the processing of ineffective assistance claims in a federal habeas corpus proceeding would be avoided if those cases are processed from the outset in the State trial and appellate courts in accordance with the applicable federal standard articulated in *Strickland* and the progeny of that case. It would also be helpful if the State post-conviction trial and appellate courts reject on their own motion the arguments presented to them that are based on the State "trial strategy" rule rather than the applicable federal standard. For the principle on which State and federal comity is based is a two-way street.

In the next part of this memorandum opinion we will state the reasons why the pending petition for habeas corpus must be denied under the applicable federal standard.

### IV

#### A.

*Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305

---

13. In *Pinkard* the Missouri Court of Appeals, Eastern District, applied the State "trial strategy" rule to affirm a Rule 27.26 trial court's refusal even to conduct an evidentiary hearing in a case in which defense counsel allegedly refused to call the defendant as a witness at a hearing on a motion to suppress. Without any discussion of the applicable federal standard, the *Pinkard* court simply applied the State "trial strategy" rule and concluded that "the selection of witnesses and evidence to be produced at a hearing is a matter of litigation strategy and ... is an inadequate ground upon which to rule representation ineffective. *Smith v. State,* 684 S.W.2d 520, 523[6] (Mo.App.1985)." 694 F.2d at 762. *Smith* in its turn, concluded that "[t]he selection of witnesses is a question of trial strategy." 684 S.W.2d at 523.

14. The petitioner in this case, for example, frankly stated at the outset of the Rule 27.26 hearing that he anticipated the necessity of "an appeal to a federal court" (Resp's Exh. G at 5) and that he would attempt to make points at that hearing which would be "reserved for the federal court." *Id.* at 37. And at the close of the Rule 27.26 hearing, when the trial court stated that "the cause is taken under advisement," the petitioner inquired "[c]an you just deny me [now] and let me get on to the federal court?" *Id.* at 86. Petitioner's notion that a federal court sits as an "appellate court" rather than a habeas corpus court in a State prisoner case is, of course, untenable.

(1986), summarized the "rigorous standard which *Strickland* erected for ineffective-assistance claims" by paraphrasing and quoting directly from that leading case:

> In order to establish ineffective representation, the defendant must prove both incompetence and prejudice. 466 U.S., at 688 [104 S.Ct. at 2065]. There is a strong presumption that counsel's performance falls within the "wide range of professional assistance," *id.*, at 689 [104 S.Ct. at 2065]; the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.*, at 688–689 [104 S.Ct. at 2065]. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.*, at 689 [104 S.Ct. at 2065].

The *Kimmelman* court also reiterated *Strickland*'s holding that "both the performance and the prejudice components of the ineffectiveness test are mixed questions of fact and law and that therefore a state court's ultimate conclusions regarding competence and prejudice are not findings of fact binding on the federal court to the extent stated by § 2254(d), see *Strickland*, 466 U.S., at 698 [104 S.Ct. at 2070]." *Id.* at 388–389, 106 S.Ct. at 2590.

*Kimmelman* rejected the notion that the ineffectiveness of defense counsel's assistance could properly be determined by labeling defense counsel's conduct as a matter of "trial strategy." The Court held that the "trial record in this case clearly reveals that Morrison's attorney['s] [failure] to file a timely suppression motion [was] not due to strategic considerations." *Id.* at 385, 106 S.Ct. at 2588. The Court further concluded that defense counsel's failure to request any pretrial discovery could not be said to have been "based on 'strategy.'"[15] *Id.*

*Kimmelman*'s holding in regard to how use of the label of "trial strategy" must be avoided echoes *Strickland*'s earlier holding that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 690–91, 104 S.Ct. at 2066. *Strickland* added that:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on *informed* strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. (Emphasis added).

*Id.* at 691, 104 S.Ct. at 2066.

### B.

■ Application of the controlling federal standard to the factual circumstances of this case is not a difficult task. Defense counsel testified that the petitioner had given him the name of Diane Terry as a person who might establish a possible alibi defense (Resp's Exh. G. at 68); that he sent an investigator attached to the public defender's office to talk with Terry (*id*); that the investigator reported that Terry could only confirm that petitioner "was staying with her at the time but [that she] was not able to say that he was at her apartment ... at the time of the robbery." *Id.*

Defense counsel testified that "after consulting with the investigator and after receiving his input [I dropped] that line of investigation." *Id.* The reasonableness of

---

**15.** The Court concluded that defense counsel's failure to act was, in fact, based on "mistaken beliefs that, the State was obliged to take the initiative and turn over all of its inculpatory evidence to the defense and that the victim's preferences would determine whether the State proceeded to trial after an indictment had been returned." *Id.* at 385, 106 S.Ct. at 2588.

defense counsel's investigation must be determined in light of defendant's statements to him and the other factual circumstances established by the record.[16]

Petitioner did not testify at the Rule 27.26 hearing or at any other time that he told defense counsel that he was with Diane Terry *at the time of the robbery.* Petitioner's only testimony in regard to what he told defense counsel about Diane Terry was given as follows on direct examination at the Rule 27.26 hearing:

Q. Did you advise Mr. Rogers who you were with on March the 23rd of 1982?

A. Yes, I did.

Q. Who did you tell him you were with?

A. Diane Terry.

Resp's Exh. G at 25.

Counsel for the State was not willing to let well enough alone. For he commenced his cross-examination with the following questions and received the following answers:

Q. Mr. Mountjoy, is it your understanding or are you telling us today that you were with Diane Terry all of the 23rd?

A. I told you that *I testified at the trial that I was with her and I am testifying to it today.*

Q. But on that Tuesday you claim that you were with her the entire day, didn't you?

A. Well, I am not going to quibble ... I told you I was with her and she has testfied to that. It is reserved for the federal court, okay. (Emphasis added).

*Id.* at 26–27.

Petitioner's testimony on cross-examination did not relate to what he told defense counsel before trial; it related to what he

told the prosecuting attorney at the Rule 27.26 hearing and to the testimony he gave at trial. Petitioner's Rule 27.26 cross-examination testimony that he had "testified at the trial" that he was with Terry "at the time of the robbery at 1:45" was, of course, in direct conflict with what the petitioner, in fact, testified at trial. His trial testimony was as follows:

Q. Is it your testimony that you were with Miss Terry *at the time this robbery occurred?*

A. Oh, I do not know that. (Emphasis added).

Resp's Exh. A at 377.

Dianna Terry Puhr's Rule 27.26 deposition testimony tends to corroborate the accuracy of the information that the investigator furnished defense counsel before trial. Her Rule 27.26 deposition testimony established that she was engaged in divorce litigation with her husband when she said she first met petitioner on a bench at the Olathe courthouse. *Id.* at 16. She testified that they went from the courthouse to her home where they drank coffee and "talked two days, all the 22nd and all the 23rd." *Id.* at 18.

Although her testimony that she had extensive contact with petitioner after they first became acquainted directly contradicted the petitioner's testimony on that subject, she made clear that she "was having marital problems then, and I didn't want to break up my marriage"; that "it wasn't none of my business"; that it was not "my problem ... I just stayed out of it, you know." *Id.* at 21.[17]

In light of all the factual circumstances stated, we have no doubt that defense counsel's investigation of the possibility of alibi was reasonable and well within the professionally competent assistance stan-

---

**16.** *Strickland* teaches that "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690, 104 S.Ct. at 2066.

**17.** The record also shows that petitioner apparently anticipated that Dianne Terry Puhr would

be a live witness at petitioner's Rule 27.26 hearing. For petitioner's counsel advised the Rule 27.26 trial court that "[t]his case was continued at the last court hearing date because Mrs. Puhr was not available to testify and did not appear." *Id.* at 14. Her deposition was taken March 10, 1987. The Rule 27.26 hearing was thereafter conducted on April 3, 1987.

dard.[18] We so find and conclude.

### C.

 Petitioner's second claim that defense counsel "failed to call to testify Mrs. Terry Goodman, an eye witness to the robbery, who could not identify movant" (Resp's Exh. F at 54) is also untenable. Although the Rule 27.26 appellate court did not make appropriate use of its finding, it reliably stated defense counsel's reasons for not running the risk of calling Mrs. Goodman to the stand. *See* 750 S.W.2d at 473. That court stated that defense counsel "feared that calling her ran the risk that in the courtroom, an inherently suggestive atmosphere, she might think that she recognized defendant, thus 'backfiring' on defendant." *Id.*

The fact that Mrs. Goodman could not identify the petitioner would not tend to establish that her husband did not make a valid courtroom identification of the petitioner. The risk that defense counsel wished to avoid was a real risk; a risk that the petitioner could not afford to run in light of the evidence adduced against him at the trial. We find and conclude that defense counsel's action was reasonable under the circumstances and well within the range of professionally competent assistance.[19]

### D.

Petitioner's third claim that petitioner's counsel failed to interview Office Bosch prior to calling him as an eye witness may summarily be denied. The record shows that Bosch was interviewed twice before trial. Further, Bosch was not called as an "eye witness"; he was called to support the petitioner's testimony in regard to how he happened to have the Safeway store money orders in his possession when he was arrested three days after the robbery. We find and conclude that defense coun-

sel's action in calling Bosch as a defense witness under the unusual circumstances of this case was proper.

We need not and do not reach *Strickland*'s second component of prejudice (466 U.S. at 687, 104 S.Ct. at 2064) for the reason we have found and concluded that petitioner has failed to carry the burden of proving *Strickland*'s first component that defense counsel's performance was in any respect deficient. *See* 466 U.S. at 697, 104 S.Ct. at 2069.

### V

For the reasons stated, it is

ORDERED that petitioner's petition for habeas corpus should be and the same is hereby denied.

---

**18.** Petitioner's alternative motion for rehearing or transfer relied on *Perkins–Bey v. State,* 735 S.W.2d 170 (Mo.App.1987), and *Eldridge v. Atkins, supra.* Both those cases are distinguishable on their respective facts.

**19.** Petitioner's alternative motion for hearing or transfer cited *Young v. State,* 721 S.W.2d 69 (Mo.App.1986), and *Stevenson v. State,* 720 S.W.2d 10 (Mo.App.1986), in support of petitioner's argument in support of his claim regarding Mrs. Goodman. Both cases are clearly distinguishable on their facts.